JOHN R. PLATER, EXC'T of CHARLOTTE L. ED-
MONDSON, *vs.* PEREGRINE GROOME, Trustee of
H. L. EDMONDSON.

A will to convey lands must be perfect on its face, executed with all the
forms and solemnities required by law, and no defect in its execution can
be aided or supplied by parol proof.

The same strictness is not required in a will of personalty, but even to con-
stitute a good will for such property, the paper must either be complete on
its face, or, if incomplete or defective, it must appear that it was intended
by the testator to operate as his will in its unfinished or incomplete state,
or that he was prevented from completing it by sickness, death, or some
other casualty.

In all cases of imperfectly executed testamentary papers, it must appear that
the testator possessed the *animus testandi* at the time it was written, and
that he intended and supposed the paper as it stood to be his will, without
looking to any thing further to be done in order to perfect it.

Though the same will may be good as to personalty and bad as to realty, still
the fact that it is thus imperfect in part, if known to the testator, is a pow-
erful circumstance to show that he did not *intend* the instrument to operate
as a will for any purpose.

Where a paper is unfinished the presumption of law is strong against it, espe-
cially where it is to alter a previously executed testamentary instrument.

The circumstances that the attestation clause was added, and the names of
the witnesses and signature of the testator were omitted, and the blanks
for the date remained unfilled, raise a presumption that the testator had
either abandoned his intention of executing the paper, or that he had never
fully made up his mind on the subject, but this presumption may be over-
come by counteracting circumstances.

In all cases where the paper is in the handwriting of another, the proof must
be clear that it has been adopted as his own by the testator.

The fact that it was prepared in conformity with the directions of the testator
is not sufficient, without some evidence that it was subsequently adopted
by him as his last will and testament.

A codicil, perfect on its face, disposing both of realty and personalty, written
by counsel, according to the directions of the testatrix, was found after her
death, with the will, but under a different envelope, in a trunk where she
kept money and valuable papers.   In the same trunk was also found an old
revoked will, and in the same envelope with the codicil a note from the
counsel who prepared it, directing the executrix to fill up the blanks for
the date when she executed it.   She died about fifteen months after the
writing of the codicil, and it was found unexecuted, the names of the wit-

nesses and the signature of the testatrix being omitted, and the blanks un-filled. The testatrix was a lady of remarkable intelligence, familiar with business, and had executed several instruments of writing. Held, that under these circumstances, this codicil could not be admitted to probate.

The case of *Brown vs. Tilden,* 5 *H. & J.,* 371, is not in conflict with this case; the two cases are different, in the former there was a necessity for making a codicil, for otherwise a son would have been undesignedly disinherited, it was in the handwriting of the testator and was confined exclusively to personalty.

The language of the court in that case, that "the codicil was a valid disposition as soon as it was written, folded up and put in a place of security," must be understood as referring *only* to the particular codicil in that case.

Appeal from the Orphans Court of Talbot county.

This appeal was taken from a *pro forma* decree of the orphans court of Talbot county, admitting to probate an unexecuted codicil to the will of Charlotte L. Edmondson. The following are the facts of the case: The testatrix duly executed her will on the 22nd of December 1849, in which she devised a farm to her daughter, Charlotte M. Plater, in fee, with a request that she would, at her death, devise the same to her only son, John R. Plater, (the grandson of the testatrix,) in fee. She also bequeathed certain negroes to her said daughter, and certain others to Peregrine Groome, in trust for her son, Horatio L. Edmondson, and appointed John R. Plater her sole executor. The proposed codicil, after expressing the desire of the testatrix to make alterations in some of the provisions of the will, manumitted one of her servants at a certain age, and then provided for an *equal* division between her said daughter and son, of all the negroes she had, by her will, bequeathed to them severally, those for the son to be held in trust, as under the will. It also directed that the farm devised by the will to the daughter should pass to the daughter for life, and after her death to the said John R. Plater in fee.

It was proved that this codicil was prepared in November 1850, by Richard B. Carmichael, Esq., at the request of the testatrix, and in precise conformity to instructions orally given by her at the house of her said daughter, which instructions

were reduced to writing on the next day and immediately sent to her. The testatrix died on the 21st of February 1852, and upon search for a will, the will above mentioned was found in a small square black trunk, on the top of the articles in the trunk, enveloped in a yellow envelope, thus endorsed: "Last will and testament of Mrs. C. L. Edmondson, executed this 22nd of December 1849, in presence of Sam'l Hambleton, Jr., Wm. H. Thomas, and Wm. P. Leaverton," the seal of which was broken. Immediately under this was found the above codicil, in a white envelope, endorsed thus: "Mrs. C. L. Edmondson from Mr. Carmichael," and within the same envelope with the codicil was found the following account and note:

"Dr., Mrs. Charlotte Edmondson,

To R. B. Carmichael,

1850, Nov. 29th.—To drawing codicil to your will, $10

My Dear Madam,—I enclose you my bill because it was your request. The date of the codicil you will insert in the blanks left for the purpose when you execute it.

Very respectfully,

RICH'D B. CARMICHAEL."

In the same trunk was also found an old will, dated the 22nd of September 1841, money to the amount of $390 in bank notes, in six or seven different parcels, separately wrapped up and some of them endorsed, which parcels were found in different parts of the trunk, not lying together, also receipts and various accounts, letters and other papers. This codicil contained the usual attestation clause for the witnesses, but the signature of the testatrix and of the witness were wanting, and the blanks for the date were not filled up. In other respects it was perfect upon its face.

The executor, in his answer to the petition of the appellee, asking that the codicil be admitted to probate, stated that he had heard the testatrix frequently say, when conversing about her affairs, that the business transacted for her by Mr. Carmichael was not to her satisfaction, and that she had thrown away ten dollars. This answer was excepted to because it

contained these declarations, which the petitioner alleged to be irrelevant and irregular, and because it was evasive and insufficient, but these exceptions the court overruled.

It was also admitted, that Mrs. Edmondson was a lady of remarkable intelligence and strength of mind, familiar with the transaction of business, and had executed several instruments of writing.

The orphans court, upon these facts, ordered and decreed *pro forma*, that the codicil be admitted to probate, and the petitioner appealed.

The cause was argued before LE GRAND, C. J., MASON and TUCK, J.

*Sam'l Hambleton* for the appellant.

1st. The will was duly executed according to all the solemn formalities of the law, and disposed of the whole estate, real and personal, of the testatrix. The proposed codicil remained unexecuted and unattested from the time it was written, in November 1850, until the death of the testatrix, and professes to disturb the disposition, both of the real and personal estate. When a paper is unfinished the presumption is strong against it, and *a fortiori* when it undertakes to revoke a disposition of the bulk of the property. 2 *Haggard*, 249, 250, *Reay vs. Cowcher*, 4 *Eng. Eccl. Rep.*, 109. There is nothing to show that there was the *animus testandi* at the time the paper was executed. The testatrix lived fifteen months after it was written, yet it remained all this time unexecuted. There must be the *animus testandi* at the time the paper was written, and the declarations of a testator will not be received without his acts. 1 *Curteis*, 158, 159, 160, *Reeves vs. Glover*, 6 *Eng. Eccl. Rep.*, 158. 1 *Curteis*, 100, *Reynolds vs. White*, 6 *Eng. Eccl. Rep.*, 100. 3 *Haggard*, 777, *Daniel vs. Nockolds*, 5 *Eng. Eccl. Rep.*, 269. The Maryland decisions are to the same effect. 4 *H. & J.*, 156, *Tilghman vs. Stewart*. A paper purporting to convey real and personal estate, must have stronger evidences of the existence of the *animus testandi*,

than one conveying personal property alone. The case of *Theodosia Key's* will, in 1 *H. & McH.*, 509, is overruled, and was not relied on in the argument of the case of *Tilghman vs. Steuart;* and besides, there were in that case the strong superadded circumstances, that the testatrix frequently declared that she had made her will, and spoke of the paper as her will, and of the legacies she had thereby given to the legatees. The case of *Brown vs. Tilden*, 5 *H. & J.*, 371, clearly recognises the law as laid down in *Tilghman vs. Steuart*, and was decided on other grounds. In that case the will and codicils were enclosed in the *same envelope*—the codicil affected *personalty* alone—it was in the handwriting of the testator, and could not have been drawn more than three months after the date of the will. In all these particulars it differs from the case at bar. The testatrix was familiar with all the requirements of a valid deed or will, for she had previously duly executed two wills. The single circumstance on which the paper is sought to be set up is, that it was found in the same trunk with the will, but the will of 1841 was also found in the same place. That unfinished papers are not to be received, unless the party was suddenly arrested by sickness and death. See 9 *Ves.*, 249, *Coles vs. Trecothick*, and 1 *Phillimore*, 12, *Scott vs. Rhodes*, 1 *Eng. Eccl. Rep.*, 15.

2nd. The exceptions to the answer were properly overruled. The defendant was asked by the petition to state *all his knowledge* respecting the paper, and in answer he gives facts derived from the lips of the testatrix herself. This was strictly responsive. 2 *H. & J.*, 304, *Hopkins vs. Stump.* 5 *H. & J.*, 381, *Jones vs. Slubey.* 1 *H. & G.*, 81, *Ringgold vs. Ringgold.*

*E. F. Chambers* for the appellee.

1st. As to the last point of the appellant, the authorities cited only enforce the legal proposition that an answer responsive to interrogatories is evidence, but that does not touch this case; here the question is, are these declarations responsive? The interrogatory is, what other knowledge he has of

that specific paper? and he is asked to tell all he knows about it. The answer is, that he heard the testatrix say that the business transacted by Mr. Carmichael was not to her liking, that she had thrown away ten dollars. This is anything but responsive. The object of the interrogatory was to gain all the *personal* knowledge of the party, and he gives the knowledge of *others*.

2nd. The important question is as to the admissibility of the paper as a codicil. There is a distinction between imperfections in the instrument and the want of a *formal execution*. The imperfections spoken of in the cases cited, are imperfections on the face of the paper itself. This distinction is noticed in 2 *Addams*, 354; 2 *Eng. Eccl. Rep.*, 340. Where a paper is perfect in itself, in its form and design, and is found in such circumstances as this was, it is a good disposition of personalty. A will or codicil need not be signed by a party, if written by his directions. There is no distinction between a paper written by the direction of the testator and one written by his own hand. It may be adopted by him though written by another, even without his direction. *Worthington on Wills*, 2, 3, *(60 Law Lib., 8.)* *Lovelass on Wills*, 315, *(25 Law Lib.)* 1 *Haggard*, 130. 3 *Eng. Eccl. Rep.*, 60. 1 *Wms. on Exc'rs*, 61, 62. There is no doubt that the paper in this case was written by the express dictation of the testatrix. It was kept in the only repository of valuable papers and money she had, and was found in juxtaposition to the will, immediately under it. Though a paper imperfect on its face may not be admitted, yet one perfect in itself and found with the will, is valid as to personalty, *non obstante* it contains a disposition of realty. The case of *Brown vs. Tilden*, 5 *H. & J.*, 371, is a leading case on this point, and it made no alteration of the law of this State, for the case of *Theodosia Key's* will, in 1 *H. & McH.*, 509, has never been doubted to be law—the case of *Tilghman vs. Steuart*, does not attempt to throw doubt upon it. In the latter case the paper was defective in itself— it could not be deciphered—no person was legatee—the devises were in blank—and it was decided on the ground that

that paper was not the will of the party, and never designed to be such. In *Brown vs. Tilden,* there was a perfect will, and a codicil perfect on its face, but unexecuted. The preservation of the paper was the sole evidence of the continuance of the *animus testandi*—the English authorities were assailed in argument there and overruled by the decision. That the preservation of the paper with the will and among valuable papers, is evidence of the *voluntas testandi,* and will establish it as a testamentary instrument. See 2 *Haggard,* 248. 1 *Phillimore,* 345, *Bone vs. Spear,* 1 *Eng. Eccl. Rep.,* 96. Though a paper imperfect in its provision will only be good, if its execution be prevented by sudden illness or death, yet the contrary is the case where the paper is, in all respects, perfect, except in regard to its execution. 3 *Phillimore,* 323. 1 *Eng. Eccl. Rep.,* 379, 407. 9 *Gill,* 44, *Boofter vs. Rogers,* which refers to the case of *Brown vs. Tilden,* and, in effect, establishes the same principle.

*Richard B. Carmichael* for the appellant, in reply.

The two grounds on which the paper is sought to be set up, are: 1st, its dictation by the testatrix, and 2nd, the *locus in quo* it was found.

There is no case in which a paper in the handwriting of a stranger, *unrecognised* by the testator, has ever been admitted to probate. The authorities cited from *Worthington on Wills,* 2, 3; *Lovelass on Wills,* 315; and 1 *Haggard,* 130, only establish the proposition, that a testamentary paper, in the handwriting of a stranger, will be admitted to probate, if the court are satisfied of *the adoption* of it by the testator,—he must sign it or the act of God must intervene to prevent him. There is nothing in this record which shows, from the hand of the testatrix, that she approved of this codicil. There must not only be an approval, but a continued recognition of it to the time of her death. If she intended by this paper to convey *real estate* and has not executed the instrument, you cannot impute to her the intent to do what she knew she could not do. A full examination of the case of *Brown vs. Tilden,*

will show that had the paper there attempted to dispose of real estate, it would not have been sustained—it only referred to personalty, and was in the handwriting of the testator. Here not a single similar fact is to be found. Where the paper is in the handwriting of the party, and put into the same envelope with the will, the court can readily see that he had the *voluntas disponendi*. Here the letter of the attorney directed the *blanks* to be filled up when the paper was executed, yet she does no act towards executing it—does not this show that the paper as it then stood, was not regarded as the final determination of the testatrix in regard to her property? See 9 *Gill*, 44, *Boofter vs. Rogers.* The old will of 1841 was found in the same trunk, and if *juxtaposition* be all that is necessary to establish the codicil, it would also establish this old will.

Recognition and adoption do not therefore exist in this case, but suppose they do, the paper was *abandoned.* This is shown by the answer of Plater. This evidence was admissible, he was asked to disclose all the knowledge he had respecting the paper. What would have been the effect if his answer had been the other way? Again, he was testifying against his own interest, and this principle ought to admit the declarations.

Tuck, J., dissented, and delivered the following opinion:

If this were a new question I might, perhaps, agree that courts of justice had already gone too far in establishing imperfect and unexecuted papers as wills. I can perceive no difference in principle between this case and *Brown vs. Tilden*, 5 *H. & J.*, 371. The authorities say, that a testamentary paper, prepared by another person than the testator, but at his request and according to his directions, will have the same effect as if written by himself. The question in such cases, is always whether it has been adopted by the testator as a testamentary disposition. There is no sufficient reason why an instrument, not signed *but adopted by other acts*, should not operate to pass personalty where land is also devised,

when the same paper, if merely signed but not attested, would so operate. This point is fully discussed by Mr. Justice Johnson, in *Tilghman vs. Steuart,* 4 *H. & J.,* 168.

In 5 *H. & J.* 372, the court said, that the "codicil was a valid disposition as soon as it was written, folded up, and put in a place of security." This was done in regard to the paper under consideration. See also 1 *Har. and McH.,* 509. In the case of *Watts and Leroy,* 4 *Wend.,* 168, a will of realty and personalty was admitted to probate to pass the personalty, although it was not signed by the testator but was put away among his valuable papers.

I think that upon the authorities the order of the orphans court should be affirmed.

MASON, J., delivered the opinion of this court.

Charlotte L. Edmondson duly executed her last will and testament, on the 22nd day of December 1849, by which the appellant, John R. Plater, was appointed sole executor. In November 1850, the testatrix, Mrs. Edmondson, caused a codicil to her will to be prepared by her counsel, R. B. Carmichael, Esq. This alleged codicil contains bequests of both personal and real estate. The will, codicil, note from Mr. Carmichael to the testatrix, and an old revoked will, were found, after her death, in a trunk where she kept money, valuable papers and other articles. The codicil never was formally executed nor signed, nor were the blanks filled up. Mr. Carmichael proves, that the codicil was prepared by him in conformity with the directions of Mrs. Edmondson ; and it is admitted as a fact in the case, that she was a lady of remarkable intelligence and strength of mind, familiar with the transaction of business, and had executed several instruments of writing. The codicil was admitted to probate as a valid testamentary paper, and we are required upon this appeal to decide whether it was properly thus admitted to probate.

It is clear that real estate could not pass under such a testamentary paper as the one now before us. A will to convey lands must be perfect on the face of it, and no defect in its

execution can be aided or supplied by parol proof. It must not only be intended as his last will and testament by the testator, but must be executed with all the forms and solemnities required by law. It is equally true, that the same strictness is not required in a will of personal property. But to constitute even a good will for personal property, the paper must be either complete on its face, or it must appear, if incomplete or defective, that it was intended by the testator that it should operate as his will in its unfinished and imperfect state, or that he was prevented from completing the contemplated formalities by being overtaken by sickness or death, or some other casualty. In all cases of imperfectly executed testamentary papers like the present, it must appear that the deceased possessed the *animum testandi* at the time it was written, and that he intended and supposed the paper as it stood to be his will, without looking to anything further to be done in order to perfect it. *Tilghman vs. Stewart*, 4 *Har. and John.*, 173. Upon these general principles, which we think are sustained by all the authorities, the present controversy must be settled.

We are then to inquire, from the facts and circumstances brought to our view, whether the codicil before us was supposed to be perfect by the testatrix, and was designed and regarded by her as sufficient to pass the property designated therein, in the condition in which it was found after her death.

It is not contended that the present paper is void merely because of its defective or imperfect character, but because of the absence of evidence, both intrinsic and extrinsic, to show that it was designed by the testatrix to be her last will and testament in the condition in which she left it. While we concede that the same will may be good for personal property and yet bad to carry real estate, still the fact that the will is thus imperfect, even in part, if known to be so by the testator, is a powerful circumstance to show that the deceased did not *intend* the instrument to operate as a will for any purpose. It tends to show, that the paper, not being considered as complete, was therefore not intended to operate as it then stood,

even upon the personalty. The reasoning of Judge Martin in the case of *Tilghman vs. Steuart*, is equally applicable to this case. He says: "As this paper contains dispositions of real as well as personal property, it is fair to conclude, the testator intended it should operate equally upon the one as the other, and not that it should be a good will as to the personal and not the real estate. It is clear, that he could not intend it to operate as to his real estate, in its present unfinished form, because, from the paper itself, it appears that he knew other acts must be done before it could be operative for that purpose—the form of attestation, the three little marks for the witnesses, and the seal, leave no doubt in my mind upon this subject. Is it not equally clear that he intended, before this paper should be his will, other acts should be done to perfect the bequests of personal property?"

Where a paper is unfinished the presumption of law is strong against it, more especially where it is to alter a previously executed testamentary instrument; and if there be added to the paper the attestation clause, and the names of the witnesses be omitted, and the signature of the testator be wanting, and the blanks remain unfilled, these circumstances will raise a presumption, that the deceased had either abandoned his intention of executing the instrument, or that he never fully made up his mind on the subject. This presumption, nevertheless, may be overcome by counteracting circumstances. *Reay vs. Cowcher*, 2 *Haggard* 249. *Lovelass on Wills*, 312.

The circumstance, too, of its being in the handwriting of another, instead of that of the testatrix herself, is a circumstance against the will. It is true that this fact, of itself, is not conclusive on the point, but in all cases where the paper is in the handwriting of another, the proof must be clear that it has been adopted as his own by the testator. In the present case we are required to infer this adoption from the fact, that the codicil was carefully put away with the will and other valuable papers of the deceased. It must be admitted, that this is the most material and strongest fact in the case to support the validity of the codicil. But its force is greatly weak-

Plater *vs.* Groome.

ened, if not entirely overthrown, when taken in consideration with the additional fact, that a previous, but *revoked* will, was found in the same trunk. If its place of safe keeping was to indicate, in this instance, the intention of the testatrix as to one paper, it should also have the same effect as to the other; but it is clear that no such purpose could have influenced the testatrix in regard to the old will, because that she had solemnly revoked by her subsequent will. It is true, that the codicil was prepared in conformity with her directions, but this is not sufficient without some evidence that it was subsequently adopted by her as her last will and testament.

Folded up with the codicil was a note from the counsel of the deceased. That note contains directions to the testatrix that the will was to be executed and the blanks filled up, in order to give it validity. She was a woman, we are told, of strong sense and business habits. As such, she would have seen the necessity of following those instructions if her purpose was to complete her will. Yet she omitted to do so, and we must therefore infer, that she did not design to reach the object to which those directions pointed. Nor was she prevented from effectuating her purpose by being overtaken by sickness, death, or some other unforeseen casualty. About fifteen months elapsed between the writing of the codicil and her death, thus affording abundant opportunity of completing it, if she had desired to do so.

Under all the circumstances of this case we regard the present instrument as nothing more than a mere *project,* or plan for a will, which was never adopted or carried into execution.

The case of *Brown vs. Tilden,* 5 *Har. and John.,* 371, does not conflict with the views herein announced. That case, though the strongest case we have found in support of the present codicil, differs in many striking particulars from the case before us. The first characteristic that distinguishes the codicil in *Brown vs. Tilden,* from the one we are now considering, is to be found in its recitals as to the necessity of making such an additional will. The testator having sold the bank stock, which in the previous will he had given to one of

19      *v.3*

his sons as his share of the estate, it is plain, that without the subsequent codicil, which was intended to make him equal with his other children, that son would have been undesignedly disinherited. This fact alone was sufficient to have stamped the instrument with the *animus testandi.*

In other respects these two cases are different. The paper in the first case was in the handwriting of the testator, this was not. No instructions from a lawyer accompanied the first paper respecting its execution and indicating the necessity of its being completed before it could operate as a valid will. The codicil in the first case was confined to personal property exclusively, while the one before us related to both personal and real estate.

The strong language of the concluding paragraph of the opinion of the court in *Brown vs. Tilden,* must be taken as having exclusive reference to the particular facts of the case. When the court there say, " the codicil was a valid disposition as soon as it was written, folded up and put in a place of security ;" they must be understood as referring *only* to the particular codicil involved in that case.

After what has already been said, nothing need be added as to whether or not the answer of the defendant was responsive to the petition.

The decree of the orphans court having been in favor of admitting the codicil to probate, we must reverse the same.

> *Decree reversed and petition dismissed,*
> *the costs to be paid out of the estate.*