Mr. Justice MacArthur
delivered the opinion of the court:
The complainants assume in their bill of complaint the validity of the codicil under which they claim as legatees. The defendants, who are the devisees mentioned in the will, assert that the codicil is not a good testamentary paper for any purpose, for the reason that it was never adopted by the *162 testator in bis life-time as a part of his will. This point most he decided mainly upon the face of the instrument itself. The codicil in question is signed by the testator beyond doubt; but he has added thereto an attestation clause in his own handwriting, which is not signed by any attesting witnesses.- It is true that the law does not require a will of personal property to be witnessed by any one; yet when the testator has been anxious to write out upon the papers a memorandum of attestation, it is very clear that he intended to acknowledge and publish it in the presence of witnesses, and that he did not consider it- complete until that formality was complied. with. There is no proof or explanation in the testimony that the testator intended that the document should have its effect of a testamentary disposition in its imperfect condition; and we must, therefore, yield to the inference that he did not design it to have any effect in its present form. The English authorities appear to be uniform that “ the presumption of law is against a testamentary paper with an attestation clause not subscribed by witnesses.” Mr. Jarman, in his work on "Wills, vol. 1, p. 92, cites the cases and explains the reasons on which they are founded. He observes: “ Cases, however, sometimes occurred under the old law, and may possibly arise under the present, in which something more than a mere compliance with legal requirements was made necessary to the efficacy of the will by the testator himself, he having chosen to prescribe to himself a special mode of execution; for in such case, if the testator afterwards neglects to comply with the prescribed formalities, the inference to be drawn from these circumstances is, that he had not fully and definitely resolved on adopting the paper as his will.” And he cites Beaty v. Beaty, 1 Adams, 154, where Sir John Nicholl said: “As the natural inference to be drawn from an attestation clause at the foot of a testamentary paper is that the writer meant to execute it in the presence of witnesses, and that it was incomplete in his apprehension of it till that operation was performed, the presumption of law is against a testamentary paper with an attestation clause not subscribed by wit *163 nesses.” (See, also, Walker v. Walker, 1 Mer., 503; Harris v. Bedford, 2 Philp, 177.)
The American cases present an instance precisely like this in Barnes v. Syester, 14 Md., 507, where the deceased left a will which he had signed, and there was an attestation clause without being subscribed by any witness. The court remark:
“ It is well settled that an instrument like the present is to be classed among unfinished testaments, on account of the attestation clause without witnesses, even where the party has signed it; that the presumption of law is against such paper, and, though a slight presumption, must be rebutted by extrinsic circumstances in order to its being pronounced for.”
Other cases, though not precisely like this, seem to adopt the same view of the law; as, in Waller v. Waller, 1 Gratt., 454, where the deceased made a statement to an attorney in regard to his will, which was taken down from his lips and read over to him at the time, and he, approving of it, directed the attorney to copy it and bring it to him for execution. He lived four days and expressed anxiety to have the will, saying, when he had signed it his affairs would be finished, but he died before it came. The leading opinion in the case discusses the proposition, that as the will had been reduced to writing during tlie life-time of the testator, by his direction, whether it was not well executed for some purposes, and the court unanimously held that it was not. But on the subject of the attestation which was found at the foot of the paper, Cabell, J., observes, in a separate opinion: “It is manifest from the paper itself that he (the deceased) intended something further to be done; that it should be signed and acknowledged in the presence of witnesses. He did not, therefore* intend this paper, which is not thus signed and acknowledged, to be his will.” Tilghman v. Stuart, 4 Har. & J., 175, and Platen v. Groome, 3 Md., 134, illustrate to some extent the same doctrine. According to this view of the law, the codicil under consideration is unfinished and incomplete as a testamentary paper, and the consequence is that we must hold it ineffectual for any purpose whatever.
*164 In addition to what has been said in regard to the validity of the codicil, I also think that the second branch of the defense is an answer to the relief prayed for in the bill. But on this point I only express my own views, for I am not quite sure that my brethren who heard the argument have given this point 'weight in their judgment.
The complainants claim a right to come upon the real estate for the amount of the personal property 'which has been applied to the payment of debts. This raises the inquiry whether the realty is subject to the payment of the legacies provided in the codicil. The facts to be considered are these: The original will contains a general provision for the payment of debts, but they are not made a charge upon the real estate, nor are they directed to be paid out of any particular property or fund. By the language of the will, the children of the testator are each to have an equal share of the estate. It is admitted, in point of fact, that the debts have been paid out of the personal assets, and that these being inadequate for that purpose, a lot of the land has been sold, under a decree of this court, and the proceeds applied to the payment of all the debts in full. The. legacies in question are given in money, wdth the direction that they be paid without unnecessary delay. But the codicil creates no fund for their payment, nor are they charged, in terms, upon any portion of the estate. "When these circumstances concur in the same case, the law is clear that the real estate devised is not liable to contribute to make up any deficiency in the personal assets for the payment of legacies. (Hayes v. Seaver, 7 Greenl., 237; Humes v. Wood, 8 Pick., 478; 2 Redf. on" Wills, 869.) Nor will legacies prevail in a court of equity against a devisee of real estate, whether he be a specific or a residuary devisee, for they both take by the bounty of the testator. (1 Story Eq. Jur., sec. 565; Forrester v. Leigh, Ambler, 371; Jarm. on Wills, 601.) It is true that a creditor stands on a different footing, for he can resort to the real estate after the personal assets are exhausted. The general rule is, that the personal property is the primary fund for the *165 payment of general creditors „and pecuniary legacies not otherwise provided for in the will; but in the distribution, the creditor is preferred to the legatee, even if nothing is left for the latter. In some cases, however, a legatee, in the administration of assets, is entitled to special equities; where, for instance, the debts are, by an expression in the will, made a charge upon the real estate, or a trust is created for their payment. In all such cases, should the personal estate be exhausted by the creditors, the legatee would be permitted to stand in their place as against the devisee, and equity would compel the devisee to refund from the real estate an amount equal to the personal assets which had been absorbed by the debts. The same principle would apply in case of a specific lien given by a will on a particular fund for the satisfaction of a legacy. Should the fund thus pledged be appropriated by creditors, the legatee would be reimbursed out of some other portion of the estate. So, also, if the personal property were applied to the payment of a mortgage debt created by the testator in his life-time, a legatee would stand in the place of the mortgagee in regard to the real estate covered by the mortgage. The principle upon which a court of equity marshals the assets in circumstances like these against a devisee, is based upon the principle that whenever a creditor has two funds to go upon, and another claimant can resort to only one of them, and that is exhausted first by the creditor, the other party can take his place to the extent that the fund has been depleted upon which he alone had a lien. A .creditor can enforce his demand against the personal estate, because as between him and the representative of the deceased that is the primary fund, (Lupton v. Lupton, 2 Johns. Ch. R., 624,) and it is first to be applied, even though the real estate may be charged. (1 Story Eq; Jur., section 571.) He has also a collateral right to resort to the real estate. He is thus doubly secured. Equity will, 'however, see that he exercises his rights so as not to absorb, beyond redress, the only security of another in one of the funds thus situated. This rule does not apply to this case, for neither the debts nor legacies *166 are charged upon any part of» the estate by the terms of the will. The personal property has been applied, as it ought to be, in the due course of administering the estate, and the fund for the payment of debts, and the only one for the payment of legacies, have been disposed of as the law directs. Legacies are never charged unless the testator has used language expressing that to be his intention, (Lupton v. Lupton, 2 Johns. Ch., 624,) and there is no such language in this codicil. We have seen that the creditor .is preferred to the devisee, (1 Story Eq. Jur., sec. 507,) but the legatee is not. The devisee takes his gift by the will, without any incumbrance in respect to legacies unless it is expressed; subject, of course; to the rights of creditors. The equities of the devisees and legatees are therefore equal, and equity will not interfere. (1 Story Eq. Jur., sec. 571.) The testator had the power to incumber the devise with debts and legacies. There is nothing here but a general direction to the executors to pay the debts, and there is no evidence of any intention to charge them on the land in exoneration of his personal estate. If the testator had exempted his personal estate from the payment of his debts, as it was competent for him to have done, lie would thus have clearly provided a fund for the satisfaction of his legacies, and the parties entitled thereto would have a controlling equity superior to that of a devisee, and he would have the relief he now invokes. Wills generally commence with expressions such as, “After the payment of my debts,” or, “Imprimis, I direct my debts to be paid,” w'hich means the same thing, and afterwards there is devise of real estate. Numerous decisions are reported holding that language like this, charges the land with the payment of debts, and such may now be considered the established construction of all such expressions in a will. The author on w'ills already referred to appears to me to strain these authorities when he seeks to infer from them the doctrine that a mere direction to pay debts makes them a charge upon real estate, whether devised or not. In the cases to which he refers there was an express direction in the will that the debts or legacies *167 should be first paid; and Chancellor Kent, in reviewing most of the same cases, in Lupton v. Lupton, supra, concludes by observing: “It is not sufficient that debts or legacies are directed to be paid. That alone does not create a charge, but they must be directed to be first or previously paid, or the devise declared to l),e made after they are paid.” The same ruling was observed in Freeman’s Chancery, 192, and in Eyles v. Carey, 1 Verm., 457.
I come to the conclusion that the land devised cannot be charged with the payment of the legacies, even conceding that the codicil is a valid instrument.
It is also contended that the devisees take as heirs, and not as devisees, which would let in legatees upon the devised estate. I think, however, it is quite clear that they take the real estate of the testator under the will as purchasers. The estate which they take by virtue of the devise is not the same as the interest they would inherit by descent. The title, therefore, passes to .them by the will, as it is a better one than that conferred by the statute. This point has been frequently overruled in Maryland. (Gilpin v. Hollingsworth, 3Md., 190; Hoffar v. Derwent, 5 Gill., 132; act of 1786, ch. 45.)
The bill of complainants must be dismissed.