(Decided 10th December, 1875.)

---

GEORGE W. DEVECMON *vs.* ALTHEA M. DEVECMON, *p. p.* and Executrix of WILLIAM DEVECMON.

*Question as to Testamentary intent ; and whether a Will to pass Leasehold Estate must be attested as required by Art. 93, sec. 301, of the Code—Leasehold estate not embraced by the terms of secs. 298 and 301 of Art. 93 of the Code—How Terms for years may be created by Will—Terms for Years in esse.*

A paper propounded for probate *as* a will was in the hand-writing of the deceased, and complete in every respect, even as a will to pass real estate, with the single exception of the failure to execute it in the presence of witnesses. It was signed and sealed by the deceased with an attestation

clause appended, and indorsed in his own hand-writing as his will. The estate of the deceased consisted mainly of personalty,—part being leasehold,— and a small amount of realty. By the terms of the paper the deceased disposed of the whole of his estate, real and personal, to one person whom he appointed his executrix. On a caveat to 'the admission of the paper to probate it was HELD:

1st. That a presumption arose from the attestation clause appended to the paper, that the deceased intended to execute it in the presence of witnesses, and that it was incomplete in his apprehension of it, even as a will to pass personal estate, until it was so executed.

2nd. That such presumption was strengthened by the instrument purporting to dispose of both real and personal property.

3rd. That such presumption is one of fact only and may be rebutted or repelled by extrinsic evidence.

4th. That any evidence that the deceased was prevented from completing the paper by death, or other sufficient cause, apart from a change of intention; or that he intended it to operate as his will in the form in which he left it, will repel the presumption against the paper and entitle it to probate, to have operation to the extent that the law will allow without other formalities than those that have been observed in its execution.

5th. That the whole inquiry in such case resolves itself into one of intention; and evidence of any act or declaration of the deceased, in respect to the paper propounded, is receivable for the purpose of showing what his real intention may have been in regard to it.

6th. That notwithstanding by the terms of the instrument it is made applicable to both real and personal estate, if the evidence clearly shows that the deceased recognized and adopted the paper, in its present form, as his will to pass his personal estate, and that a more formal and complete execution of it was intended solely for the purpose of making it operative as to his real estate, then the paper is not to be regarded as incomplete with respect to the personal property, but as to the real estate alone.

7th. That where the paper creates a common fund of real and personal estate, or where the disposition of real and personal estate is so blended that the intention of the deceased in respect to the one estate is made dependent upon the other, in such cases if the instrument cannot operate as to both estates by reason of defective execution, the Courts are strongly inclined to reject the paper *in toto*, and nothing short of the strongest proof of design on the part of the deceased will induce the Courts to admit the instrument to probate as to the personal estate alone.

Devecmon *vs.* Devecmon.

Although the paper purported to dispose of both real and personal estate, it was all to one person, and the scheme of the will, as to the personalty, was in no manner affected by its failure as to the realty. The proof in the case was entirely conclusive in support of the paper as a valid diposition of personal estate HELD:

That the Orphans Court was right in admitting the paper to probate, as sufficient to pass chattels, both real and personal.

Leasehold estate is not embraced by the terms of sections 298 and 301 of Art. 93 of the Code relating to wills.

Terms for years cannot be *created* by will unless the instrument be executed with all the formalities required to pass real estate

But terms for years *in esse* may be bequeathed by any will or testamentary paper which is sufficient to dispose of personal property.

APPEAL from the Orphans' Court of Allegany County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J.

*Ferdinand Williams*, for the appellant.

Very little importance is to be attached to the declarations of the deceased, as to the disposition he intended or had made by the will of his estate. *Pemberton vs. Pemberton*, 13 *Vesey*, 301; *Colvin vs. Fraser*, 2 *Hagg.*, 150; *Daniel vs. Nockolds*, 3 *Hagg.*, 777.

The will in controversy is not a good will, even of personal property, unless it can be shewn affirmatively that the testator intended it to operate in its unfinished condition ; the paper is upon its face incomplete and unfinished, and as such the presumptions of law are against it. In this case the presumptions are exceptionally strong against the will, because both real and personal property are devised; (1 *Williams on Executors*, 60 ;) the testator was a lawyer, and well knew that as to a great part of the pro-

perty undertaken to be devised, the will was absolutely void without witnesses; the presumption is strong, that he merely had this paper prepared to be executed, should he finally make up his mind to dispose of his property in that manner, a presumption further strengthened by the fact that the attestation clause was affixed to the will; (3 *Md.*, 144,) and by the fact that it was not a case of oversight or forgetfulness, as the disposition of his estate seems to have been a matter constantly in his mind, especially so towards the last days of his life.

In the case of *Morsell vs. Ogden*, 24 *Md.*, 377, the doctrine as laid down by Justices MARTIN and BUCHANAN, in the case of *Tilghman vs. Stewart*, 4 *H. & J.*, 165, is adopted as the true rule of law in Maryland. See *Daniel vs. Nockolds*, 3 *Hagg.*, 777; 1 *Williams on Exec's*, 60, 64 and 65; *Tilghman vs. Stewart*, 4 *H. & J.*, 166, 173; *Plater vs. Groome*, 3 *Md.*, 143 and 144; *Morsell vs. Ogden*, 24 *Md.*, 382; *Matthews vs. Warner*, 4 *Vesey*, 186 and 197; *Matthews vs. Warner*, 5 *Vesey*, 23; *Barnes vs. Syester*, 14 *Md.*, 527; *Stokes vs. Perry*, 1 *Merivale*, 507; *Roberts on Frauds*, 453; *Coles vs. Trecothick*, 9 *Vesey*, 249; *Wade vs. Overton*, 1 *Merivale*, 513; *Walker vs. Walker*, 1 *Merivale*, 503; *Bragg vs. Dyer*, 3 *Haggard*, 78; *Roose vs. Moulsdale*, 1 *Addams*, 129; *Modern Probate of Wills*, 32, 39, 41, 47, 51, 56, 57; *Public Ad'mr vs. Watts & Leroy*, 1 *Paige*, 368.

Even if the paper propounded by the appellee is a good will of *personalty*, yet the order appealed from is erroneous, for it admits the will to probate, not only as to personalty, but as to leasehold property. The order is comprehensive and admits the paper as to personal estate and *leasehold estate*, which of course embraces all leasehold estate of every kind of which the deceased may have died possessed, whether the same be for a term, certain or uncertain.

It is not denied that it has been long settled in England, that leasehold property is not within the 5th section of the

Statute of Frauds, but it by no means follows, that this Court will follow the same reasoning as to the construction of sec. 301, of Art. 93 of the Code.

In England, at the time these questions were agitated, leasehold property was of little consequence, compared with the vast interests now involved in that species of property in Maryland, for there " chattel interests in land on account of their original imbecility and insignificance were deemed personalty, and as such, were disposable by will."

In Maryland the same formal deed is required to convey leasehold above seven years, as is requisite for conveyance of the fee-simple.    Apart from any reasoning in the English cases, and of the great interest now and not then attached to property of this kind, this question comes before this Court in a different aspect from any presented to the English Courts in the construction of the Statute of Frauds.

The 5th section of the Statute of Frauds, is not now of force in Maryland; it has been superseded by sec. 301, Art. 93 of the Code, between which, and the law of which it takes the place, there is a very vital difference which can be best shewn by considering them separately.

The 5th section of the Statute of Frauds, provides that "all devises and bequests of any lands or tenements, *devisable either by force of the Statute of Wills, or by this Statute, or by force of the custom of Kent, or the custom of any Borough, or by any particular custom*, shall be in writing, signed by the party devising the same * * * and attested by three or four credible witnesses."

It is clear that the words " devisable by the Statute of Wills, or by this Statute, or by the custom of Kent, &c.," are words of limitation, and only such lands and tenements as were devisable by force of the Statute of Wills, &c., were within the meaning of the said 5th section of the Statute of Frauds—leasehold property was not devisable

by any of the statutes or customs referred to, but was devisable at common law, consequently leasehold property was not within the meaning of the 5th section of the Statute of Frauds, This being the reasoning of Lord HARDWICKE in *Tufnell vs. Page*, 2 *Atykins*, 37.

On the other hand, the 301st sec. of Art. 93 of the Code, provides, that "all devises and bequests of any lands or tenements *devisable by law*, shall be in writing, signed by the party so devising the same, * * * * and shall be attested and subscribed in presence of said devisor, by three or four credible witnesses." Being identical with the 5th sec. of the Statute of Frauds, except that the words "*devisable by law*," are substituted for the words, "*devisable by Statute of Wills, this Statute, &c.*"

And as the words "devisable by Statute of Wills, &c.," qualified and limited the meaning of words, "lands and tenements," in said section of the Statute of Frauds, so precisely and certainly do the words "devisable by law," qualify and make certain the meaning of the words "lands and tenements," in our law; (Code, Art. 93, sec. 301;) and when it is ascertained what lands and tenements are devisable by law, it will be clear what character of tenements are within the meaning of the provision of the Code in question.

Art. 93, sec. 298, of the Code, provides, that "all lands, tenements and hereditaments, *which might pass by deed*, or which would, in case of the proprietor's dying intestate, devolve on his or her heirs *or other representatives* * * * shall be subject to be disposed of, transferred and passed, by his or her last will, testament or codicil, under the following restrictions."

As a leasehold estate is a tenement which might pass by deed, or descend to the representative of the intestate owner, and further, as sec. 301, Art. 93, contains, or rather is one of the very restrictions comtemplated and referred to by sec. 298, Art. 93, the conclusion is fairly reached

that leasehold estates are within the meaning of sec. 301, Art. 93 of the Code, and that such estate will not pass by virtue of the paper propounded by the appellee, as the last will and testament of William Devecmon.

*John B. Fay* and *Wm. Walsh,* for the appellee.

The objection to probating this paper as a will is that it purports to dispose of real as well as personal estate, and has the attestation clause for three witnesses, but has not been acknowledged before them and signed by them. If there is any case where a paper purporting to dispose of real and personal estate but not executed so as to pass the former, can be admitted to probate this we think must be such a case. The paper is all in the hand-writing of the testator, dated, signed and sealed ; its identity absolutely proved ; repeated declarations from its date down to the testator's death that it was his will, and that it was a good will of personal estate. No room is left to doubt of the *animus testandi.* What more does the law require?

It is not necessary that a will of personal estate should be signed or even be in the hand-writing of the testator. This paper has certainly, so far as its execution is concerned, more than the law requires to make it a will of personalty. See *Weems vs. Weems,* 19 *Md.,* 334 ; *Brown vs. Tilden,* 5 *H. & J.,* 371 ; *Boofter vs. Rogers,* 9 *Gill,* 44 ; *Harris vs. Pue,* 39 *Md.,* 535.

The fact that the proposed paper includes real as well as personal property, and is not so executed as to dispose of the real property, merely raises a presumption that the deceased might not have intended the paper to operate as a will even as to the personalty until it was attested so as to be valid as to the real estate. But this is a slight presumption only and easily removed by proof to the contrary. Very slight circumstances have removed it in well decided cases, and none of them have such overwhelming proof of the intention of the deceased party that the will should

operate in its imperfect state as the record in this case furnishes. *Visitors of Free School vs. Bruce*, 1 *H. & McH.*, 509 ; *Watts & Leroy vs. The Public Administrator*, 4 *Wend.*, 168 ; *S. C.*, 1 *Paige*, 347 ; *Jones & Robinson vs. Kerr*, 4 *Devereux* (*L. Rep.*,) 304 ; *Fatheree and Wife vs. Lawrence*, 33 *Miss.*, 586 ; *Guthrie vs. Owen*, 2 *Humph.*, 202 ; *Brown vs. Tilden*, 6 *H. & J.*, 371 ; *Buckle vs. Buckle*, 3 *Phil.*, 323 ; *Doker vs. Goff*, 2 *Add.*, 42.

Any declaration of the party that he intended the paper to operate as his will is a sufficient publication though imperfect on its face. *Read vs. Phillips*, 2 *Phil.*, 122 ; *Harris vs. Bedford*, 2 *Phil.*, 177 ; *Bone & Newsam vs. Spear*, 1 *Phil.*, 345

In the cases in this Court where unattested and incomplete papers relating to real and personal property, have been refused probate as to the personalty, no direct evidence was furnished to the Court that the party adopted or declared the particular paper to be his will, or intended it to be operative in its unfinished state.

It is objected to the order of this Court that it admits the will to probate as to "personal and leasehold estate." It ought to be reasonably certain at this day that leasehold estate is personal estate. Leasehold is assets and goes to the executor or administrator. *Co. Lit.*, 111 *b. ;* 1 *Lom. Dig., Tit.* 7, *ch.* 1, *sec.* 18, 19 ; 2 *Blk. Com.*, 16, 384 ; 3 *Blk. Com.*, 144, 152 ; *Hewitt's Case*, 3 *Bland*, 184 ; *Williams vs. Holmes*, 9 *Md.*, 287 ; *Guy's Case*, 5 *Mass.*, 419 ; *Reynolds' Widow vs. Com'r of Starke County*, 5 *Ohio*, 204 ; 7 *Smedes and Marsh*, 479 ; *Neal vs. Hagthorp*, 3 *Bland*, 561.

The will in its efficient form was the invention of those wonderful legislators, the Roman people ; it was a most powerful instrument in modifying society by its plastic influence on proprietary right, and was therefore unsuited to the system of tenures established in England after the conquest and disappeared as to real estate until the Acts 32 and 34 Hen. 8th, restored it. But both testate and in-

testate succession to personalty always remained under the jurisdiction of the ecclesiastical courts ; and they always allowed and enforced wills of personal estate. And leasehold estate was always included in the term personal, and freely disposed of by will before as well as since the Statute of Hen. 8th, which has no reference to leasehold or other personal estate of any kind. The same distinctions as to what is real and what is personal, came from England with the colonists, and entered into and form a part of our system.

The words, lands, tenements and hereditaments used in the sections of the Code, and previous legislation relating to wills, are the technical and apt words to describe real estate as contra-distinguished from leasehold and other personal. 2 *Blk. Com.*, 16 ; *Powell on Devises*, 6 *marg.* ; 1 *Wms. on Ex.*, 1 ; 3 *Lomax Dig.*, 7, 49, *pl.* 31 ; 1 *Jarm. on Wills*, 52 *and* 54 *and Notes* (1 *Am. Ed.*;) 1 *Peere Wms.*, 575 ; 3 *N. Y.*, 192 ; *Rose vs. Bartlett*, 3 *Cro. Car.*, 393 ; 2 *Kent's Comm.*, 242 ; 3 *Kent's Comm.*, 401 ; *Knotsford vs. Gardiner*, 2 *Atkyns*, 450.

ALVEY, J., delivered the opinion of the Court.

This is an appeal from an order of the Orphans' Court of Allegany County, admitting to probate a paper purporting to be the last will and testament of William Devecmon, deceased, who died on the 4th of April, 1875. The paper was admitted to probate as valid and sufficient to pass chattels, both real and personal.

The record presents two questions for determination. 1st, Whether the paper in question, dated the 15th of July, 1867, is a good and valid testamentary disposition of the personal estate of the deceased ; and, 2ndly, whether, if the paper be sufficient to pass the personal estate, chattels real or leasehold estates will pass, without the formalities prescribed by statute for devising lands and tenements.

1. The paper propounded and admitted to probate is conceded to be wholly in the hand-writing of the deceased, and is complete in every respect, even as a will to pass real estate, with the single exception of the failure to execute it in the presence of witnesses. It was signed and sealed by the deceased, with an attestation clause appended, and indorsed in his own hand-writing, as his will. By the terms of this paper, the deceased devised and bequeathed to the widow of his deceased brother, Thomas Devecmon, the whole of his estate, real and personal; and appointed such sole devisee and legatee his executrix, and revoked all former wills. The estate of the deceased consists mainly of personalty,—part being leasehold estate; the real estate left by him being valued at from four to five thousand dollars.

The only objection made to the admission of this paper to probate, as a will of personal estate, is founded upon the presumption that, as there is an attestation clause appended, the deceased intended to execute the paper in the presence of witnesses, and that it was incomplete in his apprehension of it, even as a will to pass personal estate, until the paper was so executed. Such presumption against the paper doubtless exists, and that presumption, in this case, is strengthened, because the instrument purports to dispose of both real and personal property. But such presumption is one of fact only, and may be rebutted or repelled by extrinsic evidence. Any evidence, therefore, that the deceased was prevented from completing the paper by death, or other sufficient cause, apart from a change of intention ; or that he intended the paper to operate as his will in the form in which he left it, will repel the presumption against the paper, and entitle it to probate, to have operation to the extent that the law will allow without other formalities than those that have been observed in the execution of the paper. Hence, the whole inquiry, in such cases, resolves itself into a ques-

tion of intention, and evidence of any act or declaration of the deceased, in respect to the paper propounded, is receivable for the purpose of showing what his real intention may have been in regard to it. And, notwithstanding by the terms of the instrument it is made applicable to both real and personal estate, if the evidence clearly shows that the deceased recognized and adopted the paper in its present form, as his will to pass his personal estate, and that a more formal or complete execution of it was intended solely for the purpose of making it operative as to his real estate, then the paper is not to be regarded as incomplete with respect to the personal property, but as to the real estate alone. It is true, where the paper creates a common fund of real and personal estate, or where the disposition of the real and personal estate is so blended that the intention of the deceased in respect to the one estate is made dependent upon the other, in such cases, if the instrument cannot operate as to both estates by reason of defective execution, the Courts are strongly inclined to reject the paper *in toto*, and nothing short of the strongest proof of design on the part of the deceased will induce the Courts to admit the instrument to probate as to the personal estate alone. But such is not the case before us. For, although the paper purports to dispose of both real and personal estate, it is all to one person, and the scheme of the will, as to the personalty, is in no manner affected by its failure as to the realty.

The proof in the case is entirely conclusive in support of the paper as a valid disposition of personal estate. It is proved that the paper was carefully kept locked up, among the most valuable papers of the deceased, and was frequently shewn and referred to as his will. The disposition of his property, as made by this paper, is in exact conformity to all his declarations of intent made upon the subject. These declarations were repeatedly made through a series of years, down to the last moment that he re-

tained the power of speech. Not only did he declare his purpose of so disposing of his property, but he assigned the motive by which he was actuated in making such disposition. The deceased was an intelligent attorney, and well understood what formalities were required to make his will effectual as to the different species of property owned by him. He intended, as the evidence shows, to have published his will in such manner and form as would make it effectual to pass his real estate; but that he delayed until it was too late. He understood perfectly well, however, that the paper in its present form was sufficient to pass his personal estate, and he so declared, and that it was his will, and that it would be allowed full effect as such, so far as his personal estate was concerned. There is no difficulty or question as to the identity of the paper to which these declarations referred, and they would seem, according to all the authorities, to be abundant to establish his intention that the paper in question should stand and operate as his will as to his personal estate; and we therefore think that the Orphans' Court was right in admitting the paper to probate.

2. The next question is, whether the paper, being sufficient to pass personal estate, will pass leasehold estate, or whether leasehold estate is embraced by the terms of sections 298 and 301 of Article 93 of the Code, in regard to wills. By the first mentioned section, it is provided that all lands, tenements and hereditaments, which might pass by deed, or which would, in case of the proprietor's dying intestate, descend to or devolve on his heirs, or *other representatives,* except estates-tail, shall be subject to be disposed of by will; and by the last of the above mentioned sections, it is declared that all devises and bequests of *any lands or tenements devisable by law,* shall be in writing, signed by the testator, or by some other person in his presence, and by his express direction, and be attested and subscribed, in the presence of the devisor, by three or four credible witnesses, or else they shall be utterly void.

It is contended for the appellant, that the terms of these sections of the statute, are comprehensive enough to embrace leasehold estates, and that the same reason and policy of the law that require certain formalities to be observed in devises of freehold estates, equally apply to devises or bequests of leasehold estates. But, whatever may be thought of the reason or policy of the law upon the subject, it is quite clear, we think, that the terms of the statute do not include leasehold estates, as those terms are defined and explained by Coke and Blackstone. *Co. Litt.*, 4*a to* 6*b* ; 2 *Blacks. Com.*, 16 *to* 19.

Under the term chattel is included every species of property which is not of a freehold nature ; and a lease for a term of years, while a chattel real, is but personal estate, though it be for a term of a thousand years ; and it devolves, not on the heir, but on the personal representative of the deceased, and is assets in his hands. 2 *Kent's Com.*, 342 ; *Code, Art.* 93, *sec.* 220.

At the common law, a party had testamentary power over his personal estate, including terms for years, (*Co. Litt., Har. & B's Ed.*, 111*b., note* 1 ; 1 *Wms. on Ex'rs*, 1,) but not so as to his freehold estates in land. The testamentary power over the latter was given by the Statute of 32 Henry 8, ch. 1, explained by 34 and 35 Henry 8, ch. 5, usually called the Statutes of Wills. These Statutes applied only to freehold estates of inheritance in fee-simple. Freehold estates held by one person during the life of another, denominated estates *pur autre vie*, were made devisable by the 12th section of the Statute of Frauds. 29 *Car.* 2, *ch.* 3. If the estate *pur autre vie* be not devised, but devolve upon the heir as special occupant, it is made assets in his hands as by descent; but if such estate be not limited to the tenant and his heirs, then it passes, like personal property, to the executor or administrator, and becomes assets in his hands. 4 *Kent's Com.*, 26 ; *Code, Art.* 93, *sec.* 220. Where such an estate is limited to the

tenant and his heirs, it is not an estate of inheritance nor a descendible freehold, as the heirs do not take by descent, but by force of the gift or grant that created the estate. *Doe vs. Luxton,* 6 *T. Rep.,* 289. Hence, in the section 298 of Art. 93 of the Code, were employed the terms, "descend to or *devolve on* his or her heirs or *other representatives.*"

It is to be observed, that this section 298 of Art. 93, just referred to, is but the substantial embodiment of the Statute of Wills, as enlarged by the operation of the Statute 12 Car. 2, ch. 24, (which abolished the military tenures, and converted the Knight service lands into common socage,) together with the provision of the Statute of Frauds, with respect to the power of devise of estates *pur autre vie;* and that the section 301 of the same Article, is almost a literal transcript of the 5th section of the Statute of Frauds, prescribing the formalities for devises of lands and tenements.

These latter terms, "lands and tenements," found in the 5th section of the Statute of Frauds, as also in the section 301 of Art. 93 of our Code, have been determined to include every kind of perpetual inheritance arising out of land, or in any degree connected with, or exercisable within the same. *Habergham vs. Vincent,* 2 *Ves., Jr.,* 232 ; *Buckeridge vs. Ingham,* 2 *Ves., Jr.,* 652, 664. But it has been held, from the earliest period since the passage of the Statute of Frauds, that the formalities prescribed by the 5th section for devises of lands and tenements do not apply to bequests of estates for years. Terms for years, however, cannot be *created* by will, unless the instrument be executed with all the formalities required to pass real estate ; because the interest, in right of which the testator creates the term, is real estate, and creating the term is a partial devise of it. *Co. Litt., Har. & B's Ed.,* 111, *b, note* 3 ; *Whitchurch vs. Whitchurch,* 2 *P. Wms.,* 236 ; *S. C., Gilb. Rep. in Eq.;* 168. But terms for years in *esse,* being but chattel interests, may be bequeathed by any such

will or testamentary paper as is sufficient to dispose of personal property; and such, we suppose, has been the general understanding upon the subject.

As we find no error in the order appealed from it will be affirmed, but without costs to the appellee in this Court.

*Order affirmed.*

(Decided 14th December, 1875.)