## Richmond.

PERKINS v. JONES.

JANUARY 19th, 1888.

Absent, Richardson and Hinton, JJ.

*Wills—Olograph—Codicil.*—A will wholly written, signed and sealed by the testator, who is of sound mind, *containing an attestation clause unsigned by witnesses,* is valid. And another paper of a testamentary character bearing same date, and found folded up with said will and written and signed by the testator, is a valid codicil, though it does not refer to said will.

Error to judgment of circuit court of Albemarle county rendered May 27th, 1887, in the case of John N. Perkins, propounder of the will of Jesse W. Jones, who died May 31st, 1886, against Maria C. Ayers, Anne M. Furrow, Emma W. Edwards, and Jesse P. Jones, contestants. This proceeding began in the county court of said county, where the decision was adverse to the propounder of the will. On appeal the circuit court also rejected the will, and the propounder obtained a writ of error and *supersedeas* from one of the judges of this court. Opinion states the case.

*Davis & Harman,* for the plaintiff in error.

*S. V. Southall* and *S. B. Woods,* for the defendants in error.

LACY, J., delivered the opinion of the court.

This case is a contest concerning the will of Jesse W. Jones, of Albemarle county, who died on the thirty-first day of May, 1886. In September, 1886, on the sixteenth day of that month, the will was found upon the premises of the testator, among a large quantity of papers, in an outhouse, where the papers had been piled preparatory to a change of occupancy of the premises. These papers were at first in an old trunk, into which such a quantity of the said papers had been put, and the top so pushed down, as to burst the top off; and the papers being subsequently turned out of the trunk, as is supposed, this paper was found on the top of a large pile of the said papers. The will is dated the 14th day of May, 1862; is wholly in the handwriting of the testator; is signed and sealed by him. At the bottom is an attestation clause, unsigned by witnesses. Folded up in the will was a short paper writing, dated on the same day that the will is, and signed by the testator. This also is wholly in the handwriting of the testator, as is proved in the case, and a newspaper slip containing an obituary notice was also folded up in the will.

The will makes an unequal disposition of the property among the testator's children in some respects, and its probate was resisted by all the children aforesaid, except one who is the wife of the executor named in the will, who is the propounder of the same, and is the appellant here, John W. Perkins. The county court rejected the will; and, on appeal to the circuit court, the case was tried, and the will again rejected; whereupon the case was brought here by writ of error. The facts proved are certified, and it appears to have been proved that the will, and the inclosed paper claimed to be a codicil, are both, including the signatures, wholly in the handwriting of the testator; that the testator was seventy-three years of age at the time of his death, and that he was for some months next preceding his death in delicate health, but that *his mind was unimpaired.*

The first assignment of error here is the refusal of the court

to give the following instruction asked by the plaintiff, the propounder of the will: "If the jury believe, from the evidence, that the paper writing No. 1 [the will] offered for probate is altogether in the handwriting of Jesse W. Jones, and signed by him, they must find that said paper writing is a good and valid last will and testament, provided they also believe from the evidence that the said Jesse W. Jones was of sound and disposing mind and memory at the time he made said writing; and the fact that there is an unexecuted attestation clause at the foot of said writing No. 1 is not sufficient to invalidate the paper as a will, if its body and signature are in the handwriting of the said Jesse W. Jones." The court, in lieu of the foregoing instruction asked for by the plaintiff, gave the following: "The court instructs the jury (1) that although they may believe, from the evidence, that paper No. 1 is wholly in the handwriting of Jesse W. Jones, and signed by him, yet, having an attestation clause thereto annexed, but without witnesses, the law from this fact creates a presumption against its being a will; which presumption is, however, slight, but yet must be rebutted by some extrinsic evidence, before it can be held to be a will."

Our statute (section 4, c. 118, Code Va. 1873) provides as to the execution of wills as follows: "*No will* shall be valid unless it be in writing and signed by the testator, or by some other person in his presence, or by his direction, in such manner as to make it manifest that *the name is intended as a signature;* and, moreover, *unless it be wholly written by the testator*, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time, and such witnesses shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary." It thus appears that by our law a will wholly written by the testator, and signed by him in such manner as to make it manifest that the name is intended as a signature, is complete without attestation. Without the attestation clause,

signed by witnesses, or unsigned by them, the will is valid and complete.

We are therefore not to consider the question whether a presumption is raised by an unsigned attestation clause against an imperfect and otherwise incomplete will; that is not the question which arises in this case. There is no instrument otherwise incomplete which is to be affected by this unattested clause. The will must be conceded to be as perfect and complete under our law before the attestation clause was written as after it was written, unless the unattested clause so affects it as to render it invalid in some degree. Starting from this point, we will consider, then, what effect did the said attestation clause, unsigned, have upon this complete will.

It must be conceded that the signature to this will is so written as " to make it manifest that it is intended as a signature." It could obviously have been intended for nothing else. It is the testator's signature, and it is recognized as such in the body of the paper in due form. The statute, then, having been complied with in all respects, and the will complete, what presumption arises—what effect is produced on this complete instrument by the addition of the clause in question? The presumption is, and the probable intention of the testator was, to have the will attested when this clause was written. If he had done so, he would have added nothing to what was already complete. Not having done so, is the will invalidated by this failure to carry out this unnecessary intention?

The testator must have intended one of these things—either to have carried out his first purpose, and failed by intention or accident; to have changed his intention upon becoming aware that his first purpose was unnecessary; or to have held the purpose unexecuted in his mind. Before it was done or after it was done, the will was complete. It was an act immaterial in itself to effectuate or destroy the will. Suppose we concede, for the sake of the argument, that he put the unexecuted clause on the paper with the distinct purpose of revoking it,

would his action have had that effect, even if he had so intended? Our statute again provides on this point in the eighth section of the same chapter as follows: "No will or codicil, or any part thereof, shall be revoked, unless under the preceding section, [seventh section, which provides for revocation by marriage,] or by a subsequent will or codicil; or by some writing *declaring* an intention to revoke the same; and executed in the same manner in which a will is required to be executed; or by the testator, or some person in his presence and by his direction, cutting, tearing, burning, obliterating, canceling, or destroying the same, or the signature thereto, with the intent to revoke." The statute must be complied with as completely in order to revoke a will as it must be in order to make a valid will. At an early day in our history the legislature ingrafted upon the English statute of wills a provision which dispensed with subscribing witnesses in cases of wills wholly in the handwriting of the testator, as the statute either in England or this State did not provide where the will should be signed whether at the bottom or top, or elsewhere. It was held in some cases that a signing anywhere in the will was sufficient. Under the English statute (29 Car. II.) of course such a will had to be attested by witnesses, whether wholly written by the testator or not, as the statute required that it should be in writing, signed by him or by his direction, and that it should be attested and subscribed by three or more credible witnesses in his presence; and this view was acquiesced in in England until the statute of 1 Vict., which required that wills should be signed at the end thereof. In this State as we have seen, no witnesses were required to a will wholly written by the testator; and although our courts showed a disposition at one time to follow the English view as to the sufficiency of a signature anywhere on the paper, (*Bailey* v. *Teackle,* Wythe, 173; *Selden* v. *Coalter,* 2 Va. Cas., 553,) the publication required in England in such cases being absent under our law, the view was questioned and finally denied, as the proof of finality of intention might be

altogether wanting in an unsigned and unattested will, recited in the case of *Waller* v. *Waller*, 1 Gratt., 454. Such a will coming under consideration, it was held in this court that a will *unsigned* and *unattested*, was lacking in evidence of finality of intention, and the will in such guise was rejected. The legislature thereupon amended our statute so as to bring it plainly in accord with this decision, and it was required that the will should be signed in such manner as to make it manifest that the name was intended as a signature. Judge Allen said in *Waller* v. *Waller, supra:* "But in olograph wills signing does accomplish *another* and *most important object. It furnishes the proof,* and *generally the only proof* of which the fact is susceptible, that the act is a complete concluded act. Where an instrument is produced, proved to be in the handwriting of the deceased, showing upon its face that *it was a concluded instrument,* with his name subscribed at the end thereof, the sanity and freedom of the testator being proved, is not the proof complete? Does it not close the door upon any parol proof as to any change of testamentary intent as fully and effectually as the proof of the due execution, publication, and attestation of an attested will does?" This case was decided in 1845, and the law of this State at that time required wills of personalty to be executed and attested in the same manner as wills of real estate, (Act February 20, 1840; Acts 1839–40, c. 57, §2,) which by the act of March 4, 1835, (chapter 60, §1, p. 43, Acts 1834–5,) unless wholly written by the testator, were required to be attested by two or more credible witnesses in his presence; and it was provided by the same act that the will should be signed by the testator in case of an olograph will, and otherwise by some person in his presence and by his request.

At our revisal in 1849, the revisors recommended, as they say, in conformity to the decision in *Waller* v. *Waller, supra,* an amendment to the section, the words, "*in such manner as to make it manifest that the same is intended as a signature,*" which

in their opinion was thought better than an arbitrary rule requiring the signature at the end of the paper. Report of Rev. p. 516, c. 122, § 4. This section was adopted by the legislature as to this as recommended, though otherwise changed. Code 1849, c. 122, § 4, p. 516.

In the case of *Waller* v. *Waller*, Brooke, J., dissented, but four judges rejected the will. Only three assign their reasons, but these concur in rejecting the will because it did not manifest a finality of intention. Since the act of 1849, *supra*, the case of *Ramsey* v. *Ramsey*, 13 Gratt., 664, was decided in this court (in 1857.) In that case, which was concerning an olograph will, the only question raised and decided was as to the sufficiency of the signing where the name of the testator appeared in the beginning only, as, "I, Thomas Ramsey, of C., do make this, my last will and testament," etc. The court held that the signing at the top alone was an equivocal act, and the will was rejected because the *requirements of the statute* were not complied with, and the will was not signed in such a manner as to make it manifest that the name was intended as a signature.

In Jarman on Wills, as to execution of wills, (volume 1, p. 77,) in the first note, it is said: "It should be observed at the outset that though a will be not properly executed as a will, with subscribing witnesses, it may still be good as a olograph, when that kind of will is allowed, if it answers the requirements of the statutes as to olographs, though it contain more than the statute requires"; that something more than the statute requires, doubtless referring to an unexecuted attestation clause, as the case of *Brown* v. *Beaver*, 3 Jones, (N. C.) 516, is cited. In that case the attestation clause was signed by only one *competent* witness, one being rejected as incompetent. The will was then proved as a olograph will, and the will was sustained, the court saying: "Going beyond the requisition in respect to proofs cannot *annul that which* comes up to them."

The cited case of *Harrison* v. *Burgess* is to the same effect. 1 Hawks, 384. The will, having a defective attestation, was nevertheless proved and sustained as a olograph will.

The case of *Hill* v. *Bell*, decided in the supreme court of North Carolina in 1867, (Phil. [N. C.] 122,) was the case of an olograph will which had appended to it an attestation clause which was *unsigned by witnesses, as in this case.* The first objection urged against the will was that it contained an unsigned attestation clause, and it was claimed that the testator intended to make and publish it as an attested, and not as a olograph, will, and therefore it was never so completed as to operate as a will. This objection was overruled upon the authority of *Harrison* v. *Burgess* and *Brown* v. *Beaver, supra.* The court said: "The declaration made by the decedent in the present case, that he wished to obtain the subscription of witnesses to his will, though strengthened by an attestation clause, cannot be of more avail against its validity than was the actual attestation in the cases referred to."

By the statute in that State an olograph will is required to be in the handwriting of such deceased person, with his name subscribed thereto, or inserted in some part of such will, and the will shall be proved by three credible witnesses to be entirely in his handwriting, (Rev. Code N. C., ch. 119, § 1, p. 606,) and when these and other requisites of the statute, as to deposit, etc., have been complied with, such wills have been sustained, notwithstanding the design may have existed in the testator's mind to go further and have it witnessed, and this upon the ground that all had been done which the statute required to be done, and that more could not lawfully be required.

In the case of *Devecmon* v. *Devecmon*, 43 Md., 335, decided in the court of appeals of Maryland in 1875, the will contained an unsigned attestation clause, and purported to devise both *real* and personal estate. The incompleteness of the will, in that the attestation clause was not signed, was held to raise a presumption against it, and that this presumption was strength-

ened because the instrument purported to dispose of real estate as well as personal property. Although wholly in the hand-writing of the deceased, it was incomplete to dispose of real estate, without witnesses, under the law of that State. Code Md., art. 93, § 301. This will was, therefore, upon its face incomplete, and therefore the finality of intention not appearing upon the will, it was necessary to prove it, which was done, and the will admitted as a will of personal estate. It was void as a will to pass real estate, as we have seen.

In the case of *Plater* v *Groome*, 3 Md., 134, the court said: " When a paper is unfinished, the presumption of law is strong against it; and if there be added to the paper the attestation clause, and the names of the witnesses be omitted, and the signature of the testator be wanting, and the *blanks* remain unfilled, *these circumstances* will raise a presumption that the deceased had either abandoned his intention of executing the instrument or that he never fully made up his mind on the subject." These cases, and all similar cases, are widely different from this case, and are readily distinguished. They are cases where something essential remained to be done. In a case where a will purports to devise *real* and *personal estate*, and the will is incomplete, imperfected, so as to devise *both*, the fact that all has been done which is necessary to pass one species of property does not disturb the presumption against the finality of the intention. It is, nevertheless, an incomplete instrument. The finality of intention applies to the *will*, not to any particular species of property devised. The intention not appearing in such case upon the face of the will, the paper is insufficient, standing alone.

But if the question to be determined is as to the finality of intention, what presumption of this sort could a court discover when the whole will, standing alone, and considered *as a whole*, indicated and exhibited a complete achievement of every purpose manifested therein; and so the same court which decided the case of *Devecmon* v. *Devecmon* had already rendered a deci-

sion sustaining a will, with an unattested attestation clause, the intention of the testator being complete, so far as the will manifested any intention, without the attestation clause either signed or unsigned by witnesses, (*Brown* v. *Tilden,* 5 Har. & J., 371,) this being a case of personal estate only; while in the case of *Barnes* v. *Syester,* 14 Md., 509, which was signed and sealed with an attestation clause unsigned, this being a will of real estate as well as personal estate, the will was rejected. Without witnesses, the will was ineffectual to operate, as to the whole design of the testatrix, as evinced in the will, and a presumption was held to arise as to the finality of intention as to any part. It was not, and is not reasonable to presume that a testator's purpose is less definite as to the disposition of one species of property disposed of therein than as to any other. The question is not in any case whether the will is sufficiently executed to dispose of something mentioned therein, but whether it is, *as a will,* executed in accordance with the requirements of the law; and as to this State the requirements of the law are the same as to both species of property mentioned, and, "when the formalities are present which the law requires, parol testimony cannot be heard against the will."

The learned counsel for the appellees cites numerous authorities to support the decision of the circuit court in this case. Of them, so far as they have not already been considered, we will say that they do not apply to this will. Judge Tucker is referred to as saying: "In like manner, the completion of the declaration of the testator's intentions must sufficiently appear, or the instrument sought to be established will not be sustained"; and after speaking of the presumption raised by an unattested attestation clause, and other circumstances, he says: "And of all this the reasons are obvious, since as long as the testator leaves incompleted what he contemplates to complete by a further act, he himself cannot look upon the act as final. If, with power to complete it, he fails to do so, we have the most irresistible evidence that his mind had not finally de-

cided." If these views of this learned author (so justly extolled by counsel) are read as of the time he wrote, we will observe that he bases his remark 'on the question of finality of intention in the execution of the paper; and the provision of the statute of 1849 was not then a part of our law. Now, if the will be so signed as to make it manifest that the name is intended as a signature, the act is complete, and we find the same author saying (ch. 19, book 2, p. 292): "(2) But if the testamentary paper be not *subscribed* by the testator, *and on the face of it* there appears *an intention to make some other devises,* or to *do some other act* which is not done, it will be considered as wanting that character of *finality,* and that *conclusiveness of intention,* which are requisite to make a will, and it ought not to be admitted to probate as such." The case of *Beaty* v. *Beaty,* 1 Add., 60, is much relied on by the appellees, and the first instruction given by the circuit court was doubtless based upon this case; for the court held that the will would have been clearly entitled to probate but for the unsigned attestation clause, saying: "But if a testamentary paper be imperfect, either in itself or in the writer's apprehension of it, it can only be entitled to probate on proof being furnished of his having been prevented by the act of God from completing it; and this presumption was held to be slight." To a similar effect is *Doker* v. *Goff,* 2 Add., 42, in which there is a *quære* whether a paper so circumstanced can in all cases be considered an *unfinished* paper, the word "witnesses" being so written as to leave no room for names of witnesses beneath, and the whole question was made to turn upon the idea of finality appearing upon the paper. *Waller* v. *Waller,* 1 Gratt., 454, was a case of real and personal property, and has been already sufficiently considered along with the Maryland case, *Devecmon* v. *Devecmon, supra.*

In all these, and such similar cases as we have examined, the ground was taken that the conclusion of finality was excluded when the paper appeared to be unfinished. When this was

held as to wills like that in *Waller* v. *Waller* and *Devecmon* v. *Devecmon, supra,* the will was incomplete to effectuate the whole design contemplated by the testator, and a presumption arose. In cases like *Beatty* v. *Beatty* and *Brown* v. *Tilden, supra,* where personal property alone was concerned, the decisions are not uniform. In the first case the English court held the testamentary paper invalid. In the second, the Maryland court of appeals held the testamentary paper valid on its face, notwithstanding the want of signature, and the blank attestation clause; "the signature not being required by the law of that State to such a will." In neither England nor Maryland do the provisions of our statute obtain. In the absence of such provisions much is left to depend in all cases upon the appearance of the paper as to this question of finality. But when certain formal tests are provided by statute in the presence of these, what inference can arise as to finality of intention? As was said by this court in *Waller* v. *Waller, supra:* "When the formalities are present, parol testimony cannot be heard against the will, for that would be to hear parol testimony against the statute." "And, on the other hand, would any degree of proof short of the formalities prescribed," etc., "suffice, though aided by the strongest proof of testamentary intent?" "When the formalities are absent, parol testimony cannot avail to supply their place." Our statute having prescribed the formalities required, where these exist no further proof can be required; and when a testator has complied with all the law's prescription, and preserved his will in that guise, no endorsements thereon short of the requisites provided for revocation can affect the testamentary character of the paper. If any essential thing remains to be done to complete the entire *will,* if a signature is *necessary,* and one is wanting, or if witnesses are *necessary* to subscribe the attestation clause, and they are wanting, then the failure to complete the will is not explained by the instrument; but where everything has been done which the law requires, everything

is complete upon the face of the will, and no presumptions arise from the failure to do a wholly vain and unnecessary thing. The will in this case is complete in all respects, and, the soundness and sanity of the testator being established, the judge of the circuit court should have given the first instruction asked by the plaintiff or propounder of the will; and, if he had done so, the controversy would have ended there. All that we have said applies with equal force to the codicil; that also comes up to the requirements of the law in all respects, and the question of how far it affects or modifies the will becomes a question of construction, and is not one of probate.

The codicil is such a paper, under the proofs, in this case stated above, as must be admitted to probate. Its testamentary character is unquestionable. It is dated the same day the will is, and is on different colored paper; but it cannot be from this determined that it was written before the will. It is evidently intended as a codicil, and was so preserved with the will.

We think the circuit court of Albemarle erred in rejecting the first instruction of the plaintiff, and in giving the first instruction given by the court; and for that error its judgment appealed from here will be reversed and annulled, and the case remanded for a new trial, to be had therein in accordance with the foregoing views. This disposes of, and includes all the questions raised on the trial which remain of any importance in the case, and the remaining questions will not be reviewed in this court.

FAUNTLEROY, J., concurred in the opinion of LACY, J.

LEWIS, P., dissenting, said:

I dissent from the opinion of the court in this case. In my judgment, the law was rightly propounded to the jury by the circuit court in relation to the effect of the unsigned attestation clause at the foot of the paper, designated in the record as

paper No. 1. The argument for the appellants, which is sustained by the court, is, that the paper being wholly in the handwriting of the deceased, and complete as a will under our statute, without the attestation of witnesses, its validity as a will is not affected by the annexation of the attestation clause, because the addition of the clause was an act of supererogation.

This view, though at first blush plausible, is not sound. The real question, I take it, is not merely whether the requirements of the statute have been fully complied with, but whether the deceased had done everything that in *his apprehension* of the paper in question it was necessary to do, or that he *intended* to do, or to have done, before completing it as his will. And the presumption arising from the unsigned attestation clause is, that he did *not* regard it as a completed instrument, or as a final and concluded act. This is a well-settled rule relating to wills, if judicial decisions, almost without number, can settle anything. The law upon the subject is well stated by an eminent author as follows: "An attestation clause [annexed to a will] without witnesses makes the paper *an unfinished instrument,* even where it is signed by the testator, and the presumption of law is *against* such papers, even where the attestation by witnesses is *not indispensable,* and when offered for probate it must be rebutted." Redfield, Wills, 213, note 29. See also 1 Wms., Ex'ors, marg. p. 84; 1 Jarman, Wills, 244; 1 Tuck., Comm., 385–6.

In *Beatty* v. *Beatty,* 1 Adams' Reports, 154, a case often cited, and which, I think, is not only applicable to, but is conclusive of, the question before us, Sir John Nickoll, in delivering judgment, said: "The paper propounded would be clearly entitled to probate but for the attestation clause. It is all in the deceased's handwriting; it is signed and dated; it appoints an executrix; it is a complete disposition of personal property, and the deceased had no real estate to suggest to him the necessity of executing his will in the presence of witnesses.

But if a testamentary paper be imperfect, either in itself or in the writer's apprehension of it, it can only be entitled to probate on proof being furnished of his having been prevented by what is technically called the 'act of God' from completing it. As, therefore, the natural inference to be drawn from an attestation clause at the foot of a testamentary paper is, that the writer meant to execute it in the presence of witnesses, and that it was incomplete, *in his apprehension of it*, till that operation was performed, the presumption of law is against a testamentary paper with an attestation clause not subscribed by witnesses," though the presumption, he added (as the circuit court in the present case instructed the jury), was only a slight one. And in a note to the case, it is said that this was the doctrine of the English courts of probate from an early period, until the decision in *Cobbold* v. *Baas* in 1781, which was speedily overruled.

The English cases to the same effect are numerous. Many of them are cited by the text-writers on the subject, and need not be particularly referred to here. Nor have I been able to find, after diligent search, any case decided in England, before our revolution, in which the contrary has been held. It was asserted in the argument at the bar, that there were such decisions, *but not one was cited*, nor are any cited by the court in *Watts* v. *Public adm'r*, 4 Wend., 168—a case much relied on by the appellants—though the chief justice who delivered the opinion seemed to think there were such cases. The learned and elaborate opinion of Chancellor Walworth, from whose decision the appeal in that case was taken, and which is reported in 1 Paige, 347, is, to my mind, conclusive upon the point. Besides, *the decision* of the case in 4th Wendell, proceeded on the ground that the presumption against the paper propounded as a will, was rebutted by the evidence.

Much reliance was also placed in the argument upon the case of *Brown* v. *Tilden*, 5 Harr. & J., 371. The facts of that case were peculiar, and of it it was said by the court of appeals

of Maryland in the subsequent case of *Plater* v. *Groome*, 3 Md., 134, that the strong language used in the opinion must be taken as having exclusive reference to the particular facts of the case. And in *Plater* v. *Groome*, as well as in *Barnes* v. *Syester*, 14 Md., 507, and in the recent case of *Devecmon* v. *Devecmon*, 43 Md., 335, the principle decided in *Beatty* v. *Beatty*, *supra*, was fully recognized as a part of the law of Maryland.

I am of opinion that it is equally applicable here, as a part of the law of Virginia; for while the statute permits a holograph will to be made without the necessity for attestation by witnesses, it does *not prohibit* the making of an attested will, and, therefore, it seems to me the same presumption arises of a want of *a final testamentary intent* in respect to a paper like the one in question, as was held to arise in the case of *Beatty* v. *Beatty*. An attestation by witnesses was no more required by the English statute to make the paper propounded in that case a valid will of *personalty*, than our statute requires a holograph will to be attested by witnesses, and yet it was held that the unsigned attestation clause in that case gave rise to a presumption against the paper as a will, which was not rebutted by the evidence adduced.

Indeed, it seems to me that this view has been substantially adopted by this court as a sound legal principle, in the case of *Waller* v. *Waller*, 1 Gratt., 465, as that decision was explained in *Ramsey* v. *Ramsey*, 13 Gratt., 664. In the first-mentioned case, Judge Baldwin concurred in the opinion of Judge Allen, while Judge Stanard concurred in reversing the judgment, without concurring in Judge Allen's opinion, and Judge Brooke dissented. So that Judge Allen's opinion was *not* the opinion of the court. Cabell, P., gave an opinion of his own, in which he held that the paper propounded in that case could not be regarded as a final and concluded act, not alone because of the fact that it was not signed, but also because it was *not acknowledged* in the presence of witnessess. The paper was wholly in the handwriting of the deceased, and purported to

dispose of the whole of his estate, real and personal, and concluded thus: "In witness whereof, I have hereunto set my hand, this — day of ——, 1841.

Signed and acknowledged in the presence of ——."

Judge Cabell said the paper bore evidence on its face that the decedent did not regard it as a final and concluded act; that he intended something further to be done, namely, that it should be signed *and acknowledged* to be his will in *the presence of witnesses*, and upon this ground he concurred in reversing the judgment of the lower court admitting the paper to record. And in *Ramsey* v. *Ramsey*, it was said by Judge Daniel, in whose opinion Judge Allen and the whole court concurred, that the decision in *Waller* v. *Waller* cannot be held as declaring any principle broader than that announced in the opinion of Judge Cabell, a principle, it seems to me, in harmony not only with the ruling of the circuit court in the present case, and with the decision in *Beatty* v. *Beatty* and a long line of like decisions, but with common sense as well.

It seems somehow, to be supposed, moreover, that a question of revocation arises in the case, and much has been said upon that point. To my mind all this is irrelevant. The question here is not whether a will has been revoked, but *whether a will has been made;* and I will only add in this connection, that the presumption above mentioned in respect to the paper in question, instead of being rebutted, is strengthened by the evidence in the case.

As to the paper designated as No. 2, I will say only a few words. It was executed on the same day with paper No. 1, and is as follows: "I do not charge any of my children with any thing I may have given them before my death. The $1,000 for my daughter, Mary, is to be paid to her, and then she is to have equal of the balance. (Signed) J. W. Jones, May 14th, 1862." I am satisfied from the record that this paper *preceded* the writing of paper No. 1, and was intended as a memorandum merely, though many years afterwards

found in an out house folded up with that paper. But be that as it may, it does not expressly refer to paper No. 1, and there is nothing in the case to warrant the conclusion that it refers to it at all; so that it cannot operate, in my opinion, as a codicil, republishing paper No. 1 as a will (1 Lom. Ex'ors, 62) and it is equally clear that, standing alone, it is not entitled to be probated as a will, because altogether too vague and indefinite. The case of *Gibson* v. *Gibson*, 28 Gratt., 44, is an authority upon this point.

Many other important questions were discussed in the argument at the bar, but as the court has not found it necessary to pass upon them, I make no allusion to them. I think the opinion just delivered is contrary to the settled law, as it is laid down by all the text-writers, and as it has been expounded by the courts, and I respectfully, but most emphatically, dissent from its conclusions.

JUDGMENT REVERSED.