JOHN A. MASON and others *vs.* ALEXANDER W. POULSON, Adm'r *c. t. a.* of JOHN MASON.

*Caveat to a Will—Prayers and instructions to the Jury—Evidence—Act of 1864, ch. 104, sec. 4—Impeachment of Witness.*

The first of several issues from the Orphans' Court involving the validity of a will, in its literal meaning, might have been understood to present the question, whether the paper in contest was intended by J. M. to operate as his last will and testament "without any addition, alteration, or altera-

Mason, *et al. vs.* Poulson, Adm'r *c. t. a.*

tions," which would include alterations or additions in mere matters of form not affecting its validity as a will. A prayer offered by the caveators asked the Court to instruct the jury, "that they must find for the plaintiffs upon the first and seventh issues, unless they believe that the said J. M. intended said paper writing to be his complete and final last will and testament, without looking to anything further to be done in order to perfect it." Held:

1st. That this prayer was calculated to mislead the jury.

2nd. That there was no error in granting it, as modified by the Court by the addition of the words "whereby the disposition of his property would have been affected or changed."

3rd. That this prayer as granted, was not inconsistent with another prayer of the caveators, also granted, which presented the theory that M. did not intend the paper in question to be effective until he had appointed and named executors.

4th. That where a prayer correctly stated that the presumption of law was against the paper in question as a valid last will and testament, arising from the fact that it appears "on its face to be imperfect and unsigned," it was not error in the Court to add from abundant caution, that such presumption may be rebutted by proof, and that the jury were to determine from all the facts in the case whether the paper-writing although unsigned and imperfect in the beginning, was not finally, adopted by M. "as a sufficient expression of his intent with reference to his will."

An instruction covered by previous instructions is properly refused.

The rule that a witness can only be contradicted in reference to matters relevant to the issues, is a limit to the extent to which this kind of contradictory evidence may be introduced; and has in no instance been held to authorize such evidence to be treated as anything more than evidence going to discredit the testimony of the witness.

This rule is not changed by the Act of 1864, ch. 104, sec. 4. This section of the law does not alter the rules of evidence, except in so far as not to hold a party bound by the proof of the other party to the suit, when placed by him as a witness upon the stand, but he is permitted to rebut it by adverse testimony or by proof of admissions made by the party so examined.

The effect of such proof when offered is governed by the common law rules of evidence. If the admissions made by the witness are admissible under them as testimony-in-chief, they apply to the issues in the case, but if such admissions can only be introduced by way of impeaching the credibility of the witness they are to be confined alone to that purpose.

Mason, *et al. vs.* Poulson, Adm'r *c. t. a.*

Prayers submitting the question of "*testamentary intent*" to the jury, held not to be objectionable as submitting to them a question of law.

APPEAL from the Superior Court of Baltimore City.

This case was tried in the Court below upon the following issues sent from the Orphans' Court of Baltimore City, at the instance of the appellants, who were the caveators of the will of John Mason, the other issues having been withdrawn :

1st. Is the paper-writing purporting to be the last will and testament of John Mason, deceased, which was admitted to probate on the 30th day of July, 1870, the complete and final last will and testament of said deceased, and was it intended by him to operate as such without any addition, alteration or alterations?

7th. Whether if at the time the paper aforesaid, was written by the said John Mason, he intended to complete the same by subsequently adding anything thereto, he subsequently abandoned such intention, and recognized and adopted the said paper as his last will in its present state?

9th. Whether if said paper was written by said Mason as a schedule or draft, from which he intended to have a more formal will prepared and executed, he was subsequently prevented from carrying such purpose into effect by sickness and death, without any change of intention in regard to the provisions of his will contained in said paper ?

10th. Whether if said paper was written by said Mason as a schedule or draft from which he intended a more formal will to be prepared and executed, it was complete in all substantial particulars as such schedule or draft, and as he intended at his death that his more formal will should be?

*Exception.*—At the trial the plaintiffs, (who were the caveators,) offered the following prayers, the first prayer having been withdrawn :

2. That the jury must find for the plaintiffs on the first and seventh issues, unless they believe that the said John Mason intended said paper-writing to be his complete and final last will and testament, without looking to anything further to be done in order to perfect it.

3. Even if the jury find that the said John Mason wrote said paper-writing as a schedule or draft, from which he intended to have a more formal will prepared and executed, and was subsequently prevented by sickness and death from carrying such purpose into effect, if they further find that he intended to complete said schedule or draft by inserting therein the name or names of an executor or executors, and did not abandon said intention, and that he did not intend to execute a will without appointing therein an executor or executors, their verdict ought to be for the plaintiffs on all the issues.

4. That said paper-writing appearing on its face to be imperfect and unsigned, the presumption of law is, that the said John Mason did not intend it to be his complete and final last will and testament, or a complete schedule or draft from which he intended to have a more formal will prepared.

5. That the presumption from said paper is, that he intended to insert therein, or cause to be inserted in a more formal will to be prepared therefrom, the name or names of an executor or of executors.

\*7. That even if the jury believe that said John Mason looked for said paper-writing, and directed other persons to look for it, and on his or their inability to find it, he said it was his intention to have added a legacy to his nephew, but that he was satisfied with it as it was, they are at liberty to find that he meant thereby he was satisfied not to leave such a legacy, and not that he intended to adopt said paper-writing as his will, or as a complete schedule or draft from which he intended to have a more formal will prepared.

\* There was no *sixth* prayer in the record.

8. That the burden of proof is on the defendant to satisfy the jury of such facts as are necessary, under the instructions of the Court, to justify them in rendering a verdict in his favor.

9. That even if the jury find from the evidence, that the paper-writing in question was a memorandum or schedule of a will, the formalities of which John Mason was prevented from completing by sickness and death; yet, unless they further find that as such memorandum or schedule it was complete, and contained all the provisions which he desired to have in his will, they must find for plaintiffs upon the ninth and tenth issues, even though they believe he was prevented by sickness and death from completing the formalities thereof.

And the defendant offered the following prayers:

No. 1, A. That the jury can only consider the testimony of the witnesses, Mrs. Baptist, George W. Baptist, Jabez Mason and Watson, in regard to the statements made to them respectively by the defendant Poulson, of conversations which the said Poulson had with the deceased, John Mason, and of declarations of the said Mason to the said Poulson as rebutting testimony, to discredit the testimony of said Poulson, and not as testimony-in-chief, to prove such conversations and declarations of said Mason.

1. That if the jury find that the paper-writing given in evidence, was entirely written by said John Mason in his own hand-writing, and was carefully kept by him in a portfolio in his private drawer, where it was found at the time of his death; and shall also find that all the property mentioned in said paper-writing is leasehold or other personal property, and that said Mason had no real estate at the time it was written, or at the time of his death; and shall further believe that said John Mason's testamentary intent was finally expressed in the said paper-writing; that when it was written, he was of sound and disposing mind, and capable of making a valid deed or contract,

and so continued up to the time of his death, then the jury must find for the defendant on the first and seventh issues.

2. That if the jury find that the paper-writing given in evidence was entirely written by said John Mason, in his own hand-writing, and was carefully kept by him in a portfolio in his private drawer, where it was found at the time of his death ; and shall also find that all the property mentioned in said paper-writing is leasehold or other personal property, and that said Mason had no real estate at the time it was written, or at the time of his death ; and shall further find that the said Mason, when he was of sound and disposing mind, and capable of making a valid deed or contract, intended it to operate as his will in its present form, and so declared, and that said intention continued until his death, then the jury must find for the defendant on the first and seventh issues.

3. That if the jury find the facts set forth in defendant's prayer 1, and shall believe from the evidence, that said paper-writing was written by said Mason as a schedule or draft, from which he intended to have a more formal will prepared and executed ; and shall further find that said Mason was subsequently prevented from carrying such purpose into effect by his sickness and death, then the said paper-writing is a good and valid will of personal property, and the jury must find for the defendant on the ninth issue.

4. That if the jury should find the facts set forth in the defendant's first and third prayers, then they must find for the defendant on the ninth and tenth issues, although they should also believe that said Mason had at one time a desire to make some additional provisions ; provided they shall also find that he was undetermined in his mind as to the extent of such provisions, or the manner in which such desire should be carried out.

5. That by the alterations or additions referred to in the first and seventh issues, is not meant alterations or additions in the mere form of the instrument, but such alterations or additions as would alter or change the said Mason's testamentary intent, as contained in the paper-writing offered in evidence.

The plaintiffs objected specially to the defendant's first, second, third, fourth and fifth prayers, because they left questions of law to the jury, as well as upon other grounds.

The Court (DOBBIN, J.,) granted the plaintiffs' third, seventh and eighth prayers, and refused their second and fourth prayers as offered, but modified their second prayer by adding thereto the words: "whereby the disposition of his property would have been affected or changed," and as modified granted the same; and also modified their fourth prayer by adding thereto the words following: "But the said presumption is rebuttable, and the jury must determine from all the facts in the case, whether the said paper-writing, although imperfect and unsigned in the beginning, was not finally adopted by him as a sufficient expression of his intent with reference to the disposition of his property;" and with this modification granted the prayer. The fifth and ninth prayers were refused. The Court granted all the defendant's prayers.

The plaintiffs excepted, and the verdict being against them, they took this appeal.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON and ROBINSON, J.

*R. F. Brent* and *John H. Thomas*, for the appellants.

The appellants' second prayer was a correct exposition of the law applicable to the case, and ought to have been granted as offered. *Plater vs. Groome,* 3 *Md.,* 143 ; *Harris vs. Pue,* 39 *Md.,* 548.

The modification of said prayer, added by the Court, even if proper, if the prayer had applied to the ninth and

tenth issues, was improper in reference to a prayer confined to the first and seventh issues.

Under the modification of the Court, the jury were bound to find for the defendant, although they may have believed that the alleged testator did not intend the paper in question to operate as his will or a schedule thereof, without an addition thereto appointing an executor. This error is not corrected by the granting of the appellants' third prayer. The two instructions were so inconsistent with each other as necessarily to confuse the jury.

The appellants were entitled to have their fourth prayer granted as asked for, without the modification by the Court. This modification is liable to the same objections as urged to the modification of the second prayer.

The appellants were entitled to call the attention of the jury especially to the clause in said paper in reference to an executor, as evidence that said paper was not intended to operate as a will, and their fifth prayer was therefore improperly rejected. The purpose of said prayer was not gratified by the granting of the fourth prayer as modified by the Court, because, as before contended, the jury, under said instruction, were bound to find for the defendant, if they believed that said paper was finally adopted by the deceased as a sufficient expression of his intent with reference to the disposition of his property, although they may have believed that it was not intended by him to operate as his will without the appointment of an executor.

The declarations of the defendant, Poulson, were admissible as testimony-in-chief to prove the conversations of the deceased, in reference to the paper in question. Witnesses can only be contradicted in reference to relevant matter. 1 *Greenleaf, sec.* 462 ; 2 *Taylor on Evidence, secs.* 1292-5. They cannot be asked questions, the answers to which would be inadmissible as evidence-in-chief, for the mere purpose of contradicting them or of offering evidence in rebuttal. The appellants were therefore allowed to ask

Poulson in reference to his declaratiens on the subject in question, only because his declarations were in themselves admissible. The difference in this particular between his position and that of a witness differently circumstanced, was that the appellants were bound by making the inquiries, to afford him the opportunity of speaking in his own behalf on the subject, and that they were not by so doing precluded from contradicting his answers. For these reasons the defendant's prayer, No. 1, A, was improperly granted. *Mason vs. Poulson,* 40 *Md.,* 355; *Act of 1864, ch. 104, sec. 4.*

The defendant's first, second, third, fourth and fifth prayers were all specially excepted to, because they leave to the jury questions of law which ought to have been decided by the Court, and for that reason, among others, ought to have been rejected. Instead of submitting to the jury the question whether or not the alleged paper was in accordance with the "testamentary intent" of the deceased, the Court ought to have told them what facts were sufficient to render it valid as a will or schedule of one, and have left to them the finding of those facts only. *Deford vs. State,* 30 *Md.,* 207; *Boofter vs. Rogers,* 9 *Gill,* 44; *Penn., Del. and Md. Steam Nav. Co. vs. Hungerford,* 6 *G. & J.,* 291; *Ewalt vs. Harding & Hopkins,* 16 *Md.,* 160; *Plater vs. Scott,* 6 *G. & J.,* 116; *Crawford vs. Berry,* 6 *G. & J.,* 63; *Boyer vs. Turner,* 3 *H. & J.,* 285; *Potter vs. Wilmot,* 1 *H. & J.,* 477; *Philips vs. McCurdy,* 1 *H. & J.,* 187.

They are liable to the further objection that they required the paper-writing to be construed by the jury. They required the jury first to find what was the testamentary intent of the deceased, and afterwards whether it was expressed in the paper-writing. This could not be done without construing the paper. *Williams vs. Woods,* 16 *Md.,* 252-3.

They were liable to the still further objection that they did not limit the time within which such an inquiry as to

"testamentary intent" was to be confined.  Under those instructions the jury were required to find that the paper ·in question was the complete and final *last* will and testament of the deceased, or a valid schedule or draft thereof, if in conformity with a testamentary intent which had once existed, although it had long been altogether abandoned. *Morsell, et al. vs. Ogden,* 24 *Md.,* 377.

*Arthur Geo. Brown, Wm. B. Hill* and *F. W. Brune,* for the appellee.

That the paper offered as the will of John Mason is a valid will of personal property, has been repeatedly decided by this Court.  *Visitors of the Free School vs. Bruce,* 1 *H. & McH.,* 509 ; *Brown's Ex'r vs. Tilden,* 5 *H. & J.,* 371 ; *Weems vs. Weems,* 19 *Md.,* 334 ; *Harris vs. Pue,* 39 *Md.,* 535.

And in the following cases the Court declare what are the essential requisites of a valid will of personalty. *Tilghman vs. Stewart,* 4 *H. & J.,* 166, 167, 173, 174 *and* 176 ; *Plater vs. Groome,* 3 *Md.,* 143 ; *Boofter vs. Rogers,* 9 *Gill,* 53, 55.

It does not appear in the plaintiffs' special exception what questions of law were submitted to the jury in defendant's first, second, third, fourth and fifth prayers.  Rule of the Court of Appeals, (29 *Md.,* 2.)

But, assuming the exception to have been properly taken, it cannot seriously be contended that the intention of a testator as expressed in a given paper is not a proper question to be submitted to a jury.  If that is not to be considered by them, what are they to decide—indeed what need for a jury at all?

How is intent to be ascertained?  It is a mental process, invisible, intangible.  It cannot be seen except as it is manifested in the acts of the testator, nor recognized, except as it expresses itself in his words and actions.  And are not the acts and words of the party in such case as this, proper subjects for the consideration of a jury?

But, it may be argued, the intent may be shown, but it must not be characterized as *testamentary* intent, because that is a legal term, and might not be understood by the jury. But there can be no such thing as intent in the abstract. Before one man's mind can consider intelligently the intention of another, he must know in what direction and upon what subject the intention turns, and the actions or words of the party may then be reviewed in order to deduce from them what the particular intent may be. How, for example, could a jury render a verdict in a trial for murder if the question of the *homicidal intent* were not submitted to them, or in an action for slander, unless the question of *malicious intent* were submitted? And so in the case in question, how could the jury find at all upon the issues unless the *testamentary intent* of the party was left to their decision?

That is the very question involved in all the issues, and, as this Court has announced in its former opinion, is *simply the question* upon which the Orphans' Court asks for a decision in sending the issues for trial.

It will be found, moreover, very difficult if not impossible, as was observed by the Judge in the Court below, to frame a sentence more appropriately in which to submit the gist of this controversy to the consideration of a jury; that is to say whether the testamentary intent of Mason was expressed in the said paper-writing, and if so, whether it was *finally* expressed—and this has been twice decided affirmatively by a jury. But for the improper introduction of the probate in evidence at the first trial, the rulings of the Superior Court would have been affirmed, on the first appeal; for the closing words of the opinion of this Court are, "while upon all others there would be an affirmance, yet, as we have already said, for this fatal error—there must be a reversal."

Defendant's prayer 1 A, limiting the effect of the testimony of Mrs. Baptist, Geo. W. Baptist, Jabez Mason

and W. W. Watson, cannot successfully be called in question, as this Court, in its opinion clearly indicated the extent to which their testimony might be used.

In that opinion this Court said : "His (Mason's) declarations on the subject were evidence whether so intended or the contrary. Such declarations either way must be proved by those who heard him make them, and not by proving that some one who heard them *said* he heard them, and it makes no difference whether such *say so* came from the administrator or a party to the proceeding or not."

"Here, Poulson himself was not only a competent witness, but actually testified in the cause as to what Mason did say to him on this subject."

"The caveators themselves could have placed him on the stand, and if his testimony was against them, could have *rebutted* it by opposing proof, or by his admissions proved by other witnesses."

In support of the appellee's fourth prayer reference was had to *Harris vs. Pue,* 39 *Md.,* 535.

BRENT, J., delivered the opinion of the Court.

This case involves the establishment of an unexecuted paper, as the last will and testament of John Mason, and is now for the second time brought before this Court upon an appeal from the Superior Court of Baltimore City, to which issues had been sent from the Orphans' Court of that City upon a caveat there filed by the appellants. A new trial having been directed by this Court, 40 *Md.,* 355, the case was tried a second time in the Superior Court, and the exceptions, taken upon this second trial, present the questions for review upon the present appeal.

After the testimony had been closed, the appellants presented nine prayers. The third, seventh and eighth were granted, the first was withdrawn, and the second and fourth granted with a modification by the Court, and the fifth and ninth refused. The appellee offered six prayers,

all of which were granted. To this action of the Court in modifying the second and fourth prayers, in rejecting the fifth and ninth, and in granting the prayers of the appellee, the appellants have excepted. And they also specially except to five of the prayers of the appellee, upon the ground that "they leave questions of law to the jury."

The second prayer of the appellants asked the Court to instruct the jury, "that they must find for the plaintiffs on the 1st and 7th issues, unless they believe that the said John Mason intended said paper-writing to be his complete and final last will and testament, without looking to anything further to be done, in order to perfect it." This prayer, if granted in the form asked, might well have tended to mislead the jury. The first issue, as was held by this Court upon the former appeal, might in its literal reading be understood to present the question "whether the paper was intended by Mason to operate as his last will and testament without any addition, alteration or alterations," which would include alterations or additions in mere matters of form not affecting its validity as a will. But it would have been an idle and useless proceeding in the Orphans' Court to have ordered the trial of an issue of that character, and an equally useless waste of time in the Court of Law to try it. What, it was important for the Orphans' Court to know, was, whether there was an unexecuted intention to alter it in such particulars as to prevent the paper from being admitted to probate as a will, and the issue must be read and construed as presenting that question to the jury. Certainly the prayer does not confine the attention of the jury to such a question, as is here indicated. Under its plain meaning, they could not well do otherwise than bring in a verdict for the plaintiffs, if they found that Mason intended to do any act whether of form or otherwise in order to perfect the paper—which upon its face is conceded to be imperfect.

It is not signed, it contains no appointment of execu-
tors, although by the first item in it, debts and funeral
expenses are directed to be paid by executors "hereinafter
named," and in another of the items a blank is left, unim-
portant it is true, but which no doubt was intended to be
filled by some appropriate word. It is also equally true,
that it was the intention of the deceased to have executed
a formal will the very day upon which he died. Upon
these unquestioned facts, which may apply alone to matters
of form and not reach the substantial question in issue, the
jury might have found that Mason did not intend "said
paper-writing to be his complete and final last will and tes-
tament, without looking to anything further to be done, in
order to complete it." An instruction, which might have
led them into such an error, could not have been properly
granted, and the Court was therefore right in refusing it.
Was there error, in granting it as modified by the Court,—
that is by adding the words, "whereby the disposition of
his property would have been affected or changed?" This
prayer as modified, and the third prayer which was
granted, seem to present fairly to the jury both theories of
the appellants in regard to the paper in question. The
one is, that the proof does not establish that it was de-
signed and intended as a final disposition of the property of
the alleged testator Mason, and the other, that he did not
intend it to be effective until he had appointed and named
executors. The two instructions are not inconsistent, as
was contended in the argument. In the first, the jury are
instructed, that the plaintiffs are entitled to recover, if
Mason looked to anything further to be done whereby the
disposition of his property would be affected or changed;
and in the second, that they are also entitled to recover if
Mason did not intend to leave a will without appointing
therein an executor or executors. In either event the ver-
dict was to be rendered for them. It would have been
otherwise had the jury been instructed in either event to

find for the defendant. This would have been error, and the instructions would have presented a manifest inconsistency. But no such inconsistency exists in directing the jury to find against the alleged will, upon either or both of the grounds stated in the instructions referred to. We cannot see, in view of the proof in the case, that the modification of the Court has put any improper restriction upon the rights of the appellants to recover, or that there is any error in the instruction as granted.

The fourth prayer correctly states the presumption of law to be against the paper in question as a valid· last will and testament, arising from the fact that it appears "on its face to be imperfect and unsigned." But a jury is not to be supposed to know the force and effect of presumptions of law, and the Court committed no error by adding, from abundant caution, that such presumption may be rebutted by proof, and that they, the jury, were to determine from all the facts in the case, whether the paper-writing, although unsigned and imperfect in the beginning, was not finally adopted by Mason "as a sufficient expression of his intent with reference to his will." It has been argued that the instruction is bad, because it submits a question of law to the jury. There is no special exception taken to it upon this ground, and the question is not therefore before us.

The fifth prayer, intended, as stated in the argument, to call the attention of the jury to the clause in reference to an executor and the presumption arising from it, is covered by the third and fourth instructions, and was therefore properly refused. The third instruction is specially in reference to that clause, and the language of the fourth sufficiently full to include each and every imperfection upon the face of the paper as raising a presumption of law against its validity as a will.

The rejection of the ninth prayer has not been referred to in argument, and we may conclude that it was aban-

doned.   The Court, however, committed no error in refusing it, as it is substantially included in the other instructions granted.

This brings us to the prayers which were granted on behalf of the appellee.   In the prayer No. 1, A, the Court instructed the jury "to consider the testimony of the witnesses, Mrs. Baptist, George W. Baptist, Jabez Mason and Watson, in regard to the statements made to them respectively by the defendant, of conversations which the said Poulson had with the deceased John Mason, and of declarations of the said Mason to the said Poulson, as rebutting testimony to discredit the testimony of said Poulson, and not as testimony-in-chief, to prove such conversations and declarations of said Mason."   Upon the former appeal, it was held by this Court, that the statements and conversations of Poulson could not be testified to by other witnesses as testimony-in-chief.   40 *Md.*, 365. Poulson is now asked, when placed upon the stand as a witness, in regard to conversations held with certain persons, the names, times and places being given, so as to lay the necessary foundation to contradict him.   These persons, being afterwards placed upon the stand, testified to statements made by him to them respectively, which he had denied upon his examination, and the question now presented is, whether their testimony is to be received and considered by the jury alone as rebuttting and contradictory evidence to discredit the witness Poulson.   Of this we think there can be no doubt.   It is true, as has been stated at the argument, that the witness can only be contradicted in reference to matters relevant to the issues.   But this rule is a limit upon the extent to which this kind of contradictory evidence may be introduced, and has in no instance been held to authorize such evidence to be treated as anything more than evidence going to discredit the testimony of the witness.   Were it otherwise, the result would be the admissibility, in an indirect way, of often

the loosest and most unreliable hearsay. Nor is this rule changed by the Act of 1864, ch. 104, sec 4. This section of the law does not alter the rules of evidence, except in so far as not to hold a party bound by the proof of the other party to the suit, when placed by him as a witness upon the stand, but he is permitted to rebut it by adverse testimony, or by proof of admissions made by the party so examined. The effect of such proof when offered is governed by the common law rules of evidence. If the admissions made by the witness are admissible under them, as testimony-in-chief, they apply to the issues in the case, but if such admissions can only be introduced by way of impeaching the credibility of the witness, they are to be confined alone to that purpose. There is therefore no error in this instruction.

The objection to the other prayers of the appellee, is that they leave questions of law to the jury. It has not been insisted in the argument, that they are in other respects erroneous. The language adopted in most of these prayers, where the words "testamentary intent" are used, is not to be commended. But in looking at the proof, and issues involved in this cause, we do not think the instructions were liable to be misunderstood by the jury, or that any question of law was submitted for their determination. It is true that testamentary intent, technically speaking, involves the true meaning and construction of a will, and is to be gathered from the face of it by the Court alone. But there is no such question presented in the case before us. Here the question is, whether the paper exhibited was intended by John Mason to be a final disposition of his property, and as such should be admitted to probate as his last will and testament? The true construction of the paper was not upon trial, and could not therefore have been submitted to the jury. The language used in these instructions is to be taken in an ordinary sense, and is not to be restricted to

its technical meaning. It must be understood, from the circumstances and facts in the case, and the connection in which it is used, as meaning whether John Mason finally expressed by the paper in question, what he intended should be his will and testament,—and upon the facts submitted to the jury, the instructions could have been understood by them only in that sense. We do not think that these instructions, which in other respects are without error, have in fact submitted a question of law upon the construction of the paper to the jury, because none such is involved in the case; or that they should be treated as defective, because the language used might admit of such a construction if applied to a different state of facts.

Finding no error in the rulings of the Court below, they will be affirmed.

*Rulings affirmed.*

(Decided 23rd June, 1875.)