# CRUIT v. OWEN.

PRACTICE; SUMMONS AND SEVERANCE; WILL CONTESTS; PRESUMPTIONS; TESTAMENTARY INTENT; INSTRUCTIONS TO JURY, STATEMENT OF SPECIFIC GROUNDS OF OBJECTIONS TO.

1. A caveatee in a proceeding for the probate of a will who desires to appeal from a judgment denying probate, need not summon other caveatees who refuse to appeal and obtain a severance from them, the proceeding, unlike the ordinary action *in personam*, being *in rem*, upon the will itself and to determine its status.

2. In proceeding (before the Code D. C. went into effect) for the probate as a will of personal property, of an unsigned and unattested paper-writing, bearing no intrinsic evidence that it was intended to be a will, the presumption is strongly against its operation as such; and in the trial of issues submitted to a jury in such a proceeding, an instruction on behalf of the caveator having direct application to one of such issues, is not erroneous, when to the effect that if the jury believe that the paper-writing was written by the deceased as a draft of a will from which she intended to have a more formal will prepared and executed, then, unless they further find that she was prevented from carrying this intention into effect by sudden sickness or death, their verdict must be for the caveator, especially where, although the caveatee in her answer to the petition for administration stated that the deceased prepared and had preserved the paper with testamentary intent and directed that her attorney be sent for to prepare the same in proper form but was prevented by death from formally executing it, there is no evidence that she was prevented from having a formal will prepared and executed, if such had been her intention.

3. An objection by the caveator, made for the first time on appeal, to the use of the adjective "sudden" as qualifying the word "death" in such an instruction, is made too late, especially where the trial court in indicating to the jury the forms which their findings might take, stated one thus: "It was intended as such draft, but her sickness and death prevented the preparation and execution of a more formal paper."

4. An incomplete and unsigned will or memorandum to have been admissible to probate as a will of personalty before the Code D. C. went into effect, must have been intended to operate as a will in its

then state, or if intended as a memorandum for the preparation of a formal will, the testator must have been prevented from carrying out this latter intention through sickness, death or some other casualty, and there must have been a continuation of such intention down to the time when the act of God intervened to prevent its execution.

No. 1250. Submitted February 3, 1903. Decided March 4, 1903.

HEARING on an appeal by one of several caveatees of a paper-writing alleged to be a will of personal property, from an order of the Supreme Court of the District of Columbia, sitting as a probate court, denying probate of the same, after trial of issues submitted to a jury; and also on a motion by the appellee to dismiss the appeal on the ground that it was taken by one of several parties, jointly affected by the order appealed from, without summons and severance.

*Motion denied and order affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a judgment of the Supreme Court of the District of Columbia, holding a special term for probate business, which denied probate of a paper claimed to have been the last will of Susan T. Cruit, deceased.

The proceedings began with a petition filed March 9, 1901, by Catherine E. Owen, asking for letters of administration of the estate of Susan T. Cruit. It was alleged that the latter died December 31, 1900, intestate, leaving a personal estate amounting to about $15,000. Petitioner and Ann E. J. Cruit were alleged to be surviving sisters of intestate and her next of kin.

On March 21, 1901, Ann E. J. Cruit filed an answer to said petition, admitting the allegations of domicile, death, and amount of property of deceased, as alleged in said petition, but denying intestacy as follows:

"This respondent denies that said Susan T. Cruit left no last will and testament and avers that the contrary is the fact. And now on her own behalf the said Ann E. J. Cruit states that a short time before her death the said de-

ceased wrote with her own hand and caused to be carefully preserved the paper filed herewith with testamentary intent. and directed that her attorney be sent for to prepare the same in proper form so that she might execute it as her will, but her death prevented the formal execution of said paper or another containing the same bequests and legacies, and between the writing of said paper and the decease of the said Susan T. Cruit there was no change of her said intention. The said paper-writing contains in itself a complete disposition of all of the said estate of said Susan T. Cruit and expresses truly her wishes as to the disposition of her property, and it is the desire of this respondent to strictly carry out those wishes of her dead sister, and such will be done if the said paper-writing be declared as it should be, so this respondent avers, the last will and testament of the said deceased."

The answer concluded with a prayer to admit to probate as said last will the following paper:

" 1. 5 thousand 4 per cent. Government bond in memory of my parents, Robert and Catherine Cruit, two thousand dollar 4 per cent. in memory of my sister Mary Louisa Cruit,
B. E. C.

one thousand 3-65 District bond to Emergency hospital,
one

[one]* thousand 3-65 District bond to the Society for the Prevention of Cruelty to Animals. One thousand dollar
niece

bond to my [cousin]* Nina F. Mackall, one thousand bond
one hundred dollars to Kate D. Owens,

to my cousin Thomas W. Widdecombe, △ one hundred dollars to Jesse L. Cugle. Whatever remainder of Government
share

ment bond, my [half share]* of bank stock, my half share insurance stock [to]* T my sister Annie E. J. Cruit."

* Words in brackets erased in copy.

Replying to this answer, the said Catherine E. Owen presented the following objections to said alleged will: It is not of testamentary character, is not the last will of decedent, and was never executed by her as such; if executed, the same was through the exercise of undue influence, etc. All the provisions of the paper are vague, uncertain and incapable of being carried out, and it is void for uncertainty. There are no [such] institutions in existence, and were not when the paper was executed, as " Emergency Hospital," or " the Society for the Prevention of Cruelty to Animals." Citation was asked to all parties named as interested in said will and estate.

The Washington Humane Society appeared by answer, alleging that by act of Congress of June 21, 1870, an incorporation had been declared of the Association for the Prevention of Cruelty to Animals; that by act of February 13, 1885, the name had been changed to " Washington Humane Society;" and that since said time the society has been called and known by the name of the Society for the Prevention of Cruelty to Animals, having signs under that name on the window of its office, etc. The answer concluded with a joinder in the prayers of the answer of Ann E. J. Cruit.

Ann E. J. Cruit and Thomas W. Widdicombe filed a joint answer alleging the validity of the paper-writing as a will and denying the charges of undue influence made by the caveator.

On November 29, 1901, Kate D. Owen was substituted as a party in place of her mother, Catherine E. Owen, who had in the meantime died testate, leaving said Kate D. Owen as her executrix. On December 13, 1901, Evanina F. Mackall filed an answer referring to the previous pleadings and submitting the matter to the court as to the character of the paper-writing and whether the same should be admitted to probate.

On February 14, 1902, the following issues were framed for submission to the jury:

1. Whether the said paper-writing filed in the office of the

register of wills on the 21st day of March, 1901, is of a testamentary character.

2. Whether the said paper-writing is the last will and testament of the said Susan T. Cruit, deceased.

3. Whether the said paper-writing was executed by the said Susan T. Cruit as and for her last will and testament.

4. Whether, if said paper-writing was executed at all by decedent, was it so executed under the undue influence, importunities, suggestions, and persuasions of some person or persons.

5. Whether the said Susan T. Cruit, deceased, at the time she wrote the paper alleged to be her last will and testament, intended the same as a complete testamentary paper in the form in which it is.

6. Whether, if at the time the said paper-writing alleged to be the last will and testament of Susan T. Cruit, deceased, was written by her, she intended to complete the same, she subsequently abandoned such intention, and recognized and adopted said paper as her last will and testament in its present shape.

7. Whether, if said paper-writing alleged to be the last will and testament of Susan T. Cruit, deceased, was written by her as a draft of a will from which she intended to have a more formal will prepared and executed, she was subsequently prevented from carrying such purpose into effect by sickness and death, without any change of intention in regard to the provisions of her will contained in said paper.

The jury returned the following answers to said issues: To the first — " It is not: "   To the second — " It is not: " To the third — " It was not: "   To the fourth — " No: " To the fifth — " She did not: "   To the seventh — " It was intended as such draft, and she was not prevented by sickness and death from having a more formal will prepared and executed."

On the trial, evidence was introduced tending to show: (1) That the corporation, so entitled by law as the Central Dispensary and Emergency Hospital, goes generally by the

name of the " Emergency Hospital;" that there was at one
time another called the " Emergency Hospital," but that for
several years it had been known as the " Casualty Hospital;"
and that some general hospitals have emergency attachments,
but do not go by that name.   (2)  That Miss Susan T. Cruit
died December 31, 1900, aged about seventy years; that she
was stricken with paralysis the day before her death — par-
tial paralysis; that her health had not been good for a month
before, but she was possessed of her mental faculties.    (3)
That said Susan T. Cruit was the manager of a large estate
left by her father which produced an income of about $11,000
per year, and usually wrote letters, executed receipts, etc.,
connected therewith; that she usually used a pencil in writ-
ing unimportant matters, and that the paper claimed to be
the will was in her handwriting.    (4)  Thomas W. Widdi-
combe was the only witness to prove that the paper had been
executed as a will.   He testified that he was a cousin of the
deceased, and had lived in the house with her for about six
years.   She and her sister Ann E. J. Cruit lived in the
same house.   That on November 28, Miss Susan Cruit said
to him:  " I wish you would get me a piece of paper."  He
said:  " How big a piece?"    She said:   " Bring me a
piece."  He said:   " Will foolscap do?"   She said " Yes."
He went to a drawer where he kept his things and brought
her a piece of foolscap and gave her a pencil.   She wrote for
about twenty minutes, then folded up the paper, handed it
to witness, and said:  " I want you to take care of that paper
for me; that is my will.   That's what I want to do with my
money."   She then said:   " I don't feel well this morning;
you go and telephone for the doctor, old Dr. Mackall, and
have him come over here right away; I don't feel well this
morning."   The doctor came and stayed a few minutes and.
left a prescription which she directed witness to have filled.
That she was not very well after that, and, that with one
exception, she did not go out of the house after that; she
went to Epiphany Church on December 19.   The doctor
did not come to see her again until about a week before her
death, when she directed witness to telephone for him, say-

ing " she did not feel good." That he assisted her and gave her medicine during her sickness. That on December 31, he had gone out and upon his return Miss Ann Cruit told him that her sister, Miss Cruit, had fallen, and he was wanted to help her get in bed. After putting her in bed, she said to witness: " You've got my will, ain't you? take care of it." He said: " I suppose it's your will." That he had not read the will, but Miss Cruit told him some of the contents; said she had given Mrs. Mackall $1,000, and " have given you a $1,000 bond." She said: " I have remembered all Mrs. Owen's children."

Witness said that she gave him the impression that she had given each of them $1,000, and had told Miss Kate D. Owen that her Aunt Susan had given her $1,000. Witness put the paper, when delivered to him, " in a locker in a folding bed that is like a bureau, in the front part of which he kept some of his papers, and locked it up." That it remained there from November 28 until after Miss Cruit's death, after which he gave it to Mr. Thomas, the attorney, who represents the caveatees. The paper, heretofore copied, was then produced. On cross-examination witness reiterated that the paper had been written on November 28. He said he had not told Chapin Brown that the paper had been written in October. That he took up a half sheet of paper when deceased asked for it, and she said it was enough. He saw that one side was clear and did not examine the other side of the sheet (there are some figures and words on the other side, such as steak, coffee, etc., which witness said were not in his handwriting, and were not in that of deceased). Witness did not tell Miss Ann E. J. Cruit of this. Miss Owen was the first person he told and that was after the decease. That he told Miss Owen he supposed she and other sisters would get $1,000 each, the same as witness and Mrs. Mackall. That he did not read the paper before the death of Miss Cruit. He did not tell Miss Ann Cruit because she was very much grieved.

Miss Ann E. J. Cruit was examined by the caveators. She is the sister of the deceased. Her attention was called to the

paragraph of her sworn answer of March 21, 1901 — the extract from which concerning the memorandum will of November 28 is set forth herein above — and she was asked where she obtained that information. She could not state positively, but thought her sister had told her a week or ten days before her death that she had made a will. Having been again asked if she had read the said answer, she said that " she had answered to the best of her belief; that her sister told her what it was, but that she did not discuss it because she was always opposed to wills." She said: " I think it means people's death, and I did not want my people to die, so I very seldom talk about wills; that's the reason I did not talk to my sister any more about it." (A joint answer subscribed and sworn to by both Miss Cruit and Thomas W. Widdicombe was filed May 2, 1901, in which the answer of March 21 was referred to and made a part of the same.)

Miss Kate Dean Owen, on behalf of the caveator, testified that on Sunday, December 30, Mr. Widdicombe told her her aunt was much better. That after her aunt's death she asked him what was the paper that Mrs. Mackall spoke of, and he said: "A memorandum that your Aunt Susie left." He said it was what she wanted done with her bonds. He said " $5,000 in memory of your grandfather and grandmother; $2,000 in memory of Louisa; $1,000 each to Nina, Jessie, and you and myself, and $1,000 to the Society for the Prevention of Cruelty to Animals, and $1,000 to the Emergency Hospital; all the rest to Miss Ann and your mother." Witness replied there would be no " rest." She further said that Widdicombe told her the will had been made in the summer when all were in the country. Jessie Owen Cugle testified to Widdicombe's report of Miss Cruit's improved condition on Sunday — she died on Monday. She examined the memoranda on the back of the alleged will, and said it was Widdicombe's. Widdicombe told her that $1,000 was left to Mrs. Mackall, himself, to Kate Dean Owen, and to witness. Chapin Brown testified that Widdicombe told him that the paper had been written in October. Kate Dean Owen, recalled, said that the memoranda on the

back of the paper were in Widdicombe's writing. The court refused an instruction to find for the caveatees, to which an exception was taken, and then directed the jury to answer " No " to the fourth issue, as there was no evidence of undue influence.

He then instructed the jury, as requested by caveatees, that a will could be written with a pencil, and that, under the law in force at time of Miss Cruit's death, a will as to personal estate would be valid though unsigned or attested; and that all that was necessary was that the paper should have been written by the testatrix as a will, and that her intention that it should so operate remaining unchanged the verdict should be in favor of the caveatees. In the course of the general charge the following special instructions were given at the request of the caveator:

" 2. The jury are instructed that the burden of proof as to the issue relating to the testamentary character of the paper-writing (issue No. 1) and the burden of proof as to the issue, whether said paper-writing is the last will and testament of the decedent, Susan T. Cruit (issue No. 2), and the burden of proof as to the issue relating to the due execution of the said paper-writing as the last will and testament of said decedent (issue No. 3), is upon the plaintiffs, the caveatees, and that they must prove the affirmative of these issues by a preponderance of the evidence, and in determining the preponderance of the evidence the jury are not bound by the oral testimony of any one or more witnesses, but the jury are to consider and weigh the oral testimony of any one or more witnesses in connection with both the oral testimony of other witness or witnesses and with all the other evidence either written or otherwise, in the case. If the evidence bearing upon any one or more of the above-mentioned issues, estimated by the impression it makes on the mind of the jury, is evenly balanced, then the plaintiff must fail, and the answer to such of the above-mentioned issues must be in the negative, and in favor of the defendants, the caveators."

" 5. If the jury find from all the evidence that the paper-

writing alleged to be the last will and testament of Susan T. Cruit, deceased, was written by her as a draft of a will from which she intended to have a more formal will prepared and executed, then the jury are instructed that unless they shall further find from the evidence that she was prevented from carrying this intention into effect by sudden sickness or death, then their verdict must be for the defendants, the caveators."

These instructions were excepted to by the caveatees, and an exception was also taken to the following part of the general charge:

" If she intended it simply as a draft of a will that she was going to have prepared, some memoranda that she had jotted down for the mere purpose of informing her counsel or some one that she was going to ask to draw her will for her, to prepare her formal will, and if she did not intend it to take effect until that will should be prepared and duly signed and executed, then of course you cannot find a verdict in favor of the will; but if you come to that conclusion you must come to it from the evidence in the case, from the testimony of the witnesses given on the witness stand and from the paper itself, and from the other evidence and circumstances of the case, considering it altogether; because you have to look at it as a whole. Place yourselves in the position of this old lady, under the surroundings, so far as you can, in order to make up your minds what she did really intend by writing this paper and delivering it over to Mr. Widdicombe, if she did write it and deliver it over to him with the injunction that she gave him to preserve it."

Ann E. J. Cruit, alone, has appealed from the judgment entered on the verdict.

*Mr. E. H. Thomas* for the appellant:

1. The instruction to the effect that an immediate or sudden sickness or death was required is precisely contrary to the established rule of law. *Boofter* v. *Rogers,* 9 Gill

(Md.), 44; *Weems* v. *Weems,* 19 Md. 334; *De Vecmon* v. *De Vecmon,* 43 Md. 335.

2. A testament of chattels written in the testator's own hand, though it has neither his name nor seal to it, nor witnesses present at its publication, is good, provided sufficient proof can be had that it is his handwriting. 2 Bl. Comm. 501; Comyn's Dig., Devise, p. 3, " Testament in writing." So, if the testator declares his will, and wishes B. who is present to write it, whereupon B. is sent for by his wife without other direction, and he writes the will in the life of the testator from the mouths of the witnesses present, but the testator was senseless before the writing was finished. *And it shall be good for so much as the witnesses agree in,* though they disagree as to another part. So notes in writing prepared by A., which he declares *to be the effect of his will,* and which he delivers to counsel with the deeds of his estate as instructions for his will in form, though he dies before the will drawn by counsel is executed. Comyn's Dig. (1st ed.), p. 4. After the Stat. 32 & 34 Hen. VIII, is was sufficient that a will was put in writing by the testator, or by another with his privity and direction, *without any other execution.* So, if notes were written for the disposition of part of his estate, it was good for so much. 2 Shep. Touch. The form of the paper is not material. Comyn's Dig., Devise (D. 1), p. 3; 1 Jarm. on Wills, 18; 10 Bac. Abr. 516; *Vestry* v. *Bostwick,* 8 App. D. C. 468; *Ross* v. *Ewer,* 3 Atk. 163; *Wareham* v. *Sellers,* 9 Gill & J. (Md.) 98; *Kelleher* v. *Kernan,* 60 Md. 440; *Boofter* v. *Rogers,* 9 Gill (Md.), 44; *Harris* v. *Pue,* 39 Md. 544; *Mason* v. *Poulson,* 43 Md. 174; *Visitors* v. *Bruce,* 1 Har. & McH. (Md.) 509; *Carey* v. *Dennis,* 13 Md. 1; *Boyd* v. *Boyd,* 6 Gill & J. (Md.) 25; *Cover* v. *Stem,* 67 Md. 449; 1 Wms. Exrs., pt. I, bk. II, Chap. 2, Secs. 1, 3 (5th Am. ed.), star pp. 58–90 *et seq.;* Dennis Prob. Law, D. C., p. 14 note; Hinckley's Test. Law, pp. 21–26, 47; *Forbes* v. *Gordon,* 3 Phil. (N. C.) 485, 614; 1 Wms. Exrs., p. 62; Beach on Wills, Sec. 50; 1 Underhill, Sec. 41, citing *In re Beebe,* 6 Dem. (N. Y.) 43. Nor is a will affected by the leaving of blank spaces. *Tilgham* v. *Stewart,* 4 Harr. & J.

(Md.) 118; *Harris* v. *Pue*, 39 Md. 544; *Mason* v. *Poulson*, 43 Md. 174; *Visitors* v. *Bruce*, 1 Har. & McH. (Md.) 509. Nor is a date required. *Friswell* v. *Moore*, 3 Phillim. (Lib. ed. 379), 135; *Belt* v. *Belt*, 1 Har. & McH. (Md.) 409; *Brown* v. *Tilden*, 5 Harr. & J. (Md.) 371; *Visitors* v. *Bruce*, 1 Har. & McH. (Md.) 509; *Darrell* v. *Brooke*, 2 Hayw. & H. 329; Hinckley's Test. Law, p. 46; *Deakins* v. *Hollis*, 7 Gill & J. (Md.) 316; 1 Jarm. on Wills, 27; *Wright* v. *Wright*, 5 Ind. 392. Nor does a will of personal property need to be signed, sealed, or witnessed. *Darrell* v. *Brooke*, 2 Hayw. & H. 329; *Friswell* v. *Moore*, 3 Phillim. (Lib. ed. 379), 135; 2 Bl. Comm. 501; *Belt* v. *Belt*, 1 Har. & McH. (Md.) 409; *Brown* v. *Tilden*, 5 Harr. & J. (Md.) 371; *Visitors* v. *Bruce*, 1 Har. & McH. (Md.) 509; 1 Bl. Comm. (Sharsw'd ed.), bk. II, star p. 502; 1 Wms. Exrs., pt. I, bk. II, Chap. 2, Sec. 1; *Campbell* v. *Porter*, 162 U. S. 484; *McIntire* v. *McIntire*, 19 App. D. C. 482; *McIntire* v. *McIntire*, 162 U. S. 383; *Gaskins* v. *Gaskins*, 3 Fed. Rep. 158; *Frierson* v. *Beall*, 7 Ga. 438. A will, if written in lead pencil, is, if properly executed, unquestionably valid. 1 Underhill, Wills, Sec. 183; *Harris* v. *Pue*, 39 Md. 535; *Mence* v. *Mence*, 18 Ves. 348; *Bateman* v. *Pennington*, 3 Moore Prob. Cas. 223; *Myers* v. *Vanderbilt*, 84 Pa. St. 510; *Mason* v. *Poulson*, 40 Md. 355. A paper, although intended merely as instructions or a memorandum to enable the scrivener to prepare the will, is to be admitted to probate if a more formal will be left unfinished by reason of any act which the law pronounces to be the act of God. There must, however, be a continuance of the intention down to the time when the act of God intervened and prevented the deceased from executing his purpose. 2 Hag. 211; 6 Eccl. Rep. 330; *Boofter* v. *Rogers*, 9 Gill (Md.), 44; *Lungren* v. *Swartzwelder*, 44 Md. 482; *Morcell* v. *Ogden*, 24 Md. 377; *Weems* v. *Weems*, 19 Md. 334; *Byers* v. *Hoppe*, 61 Md. 206; *Mason* v. *Poulson*, 43 Md. 174; *Devecmon* v. *Devecmon*, 43 Md. 35; *Barwick* v. *Mullings*, 2 Hag. (Lib. ed. 98), 225; *Toore* v. *Castle*, 1 Curt. 303; *Bone* v. *Spear*, 1 Phillim. 345; *Scott* v. *Rhodes*, 1 Phil. (N. C.) 12. An instrument in any

form, whether deed or bond, where the obvious purpose is
that it shall not take effect until after death of the party
making it, is a will, and it matters not whether the party
at the time of executing it intended to make a will or not.
*Carey* v. *Denis,* 13 Md. 1; *Wareham* v. *Sellers,* 9 Gill & J.
(Md.) 98; *Kelleher* v. *Kernan,* 60 Md. 440; *Byers* v. *Hoppe,*
61 Md. 206; *Boyd* v. *Boyd,* 6 Gill & J. (Md.) 25; *Cover* v.
*Stem,* 67 Md. 449. A testator must have that which is called
the *animus testandi,* although he need not have the purpose
to make a will in form, if he is found to have the intention
to do, by the paper made, that which a will only can effect.
*Kelleher* v. *Kernan,* 60 Md. 440.

*Mr. J. P. Earnest* and *Mr. Chapin Brown* for the appellee:

All parties against whom a joint judgment or decree is
rendered must join in a writ of error or appeal, unless there
has been a severance of the parties in interest, effected by
summons and severance, or by an equivalent proceeding
appearing in the record. *Owings* v. *Kincannon,* 7 Pet.
(U. S.) 399; *Todd* v. *Daniels,* 16 Pet. (U. S.) 521; *Mas-
terson* v. *Howard,* 10 Wall. (U. S.) 416; *Hardee* v. *Nilson,*
146 U. S. 179; *Inglehart* v. *Stansbury,* 151 U. S. 68; *God-
frey* v. *Roessle,* 5 App. D. C. 299, 300; *Slater* v. *Hamacher,*
15 App. D. C. 294. This court, in *Slater* v. *Hamacher,*
*supra,* while recognizing fully the principle of the cases de-
cided by the Supreme Court of the United States cited, and
following same, holds that to do justice they may, within their
discretion, allow an amendment bringing in necessary parties
who have been omitted or a proceeding equivalent to sum-
mons and severance under the special conditions or circum-
stances of any case. Under the circumstances of the case
this is not a case which calls for the exercise by the court of
its discretion in allowing a summons and severance at this
stage of the proceedings. Necessary parties to the appeal
have been omitted, nor has summons and severance been
taken as to them, and the rule as laid down by the Supreme
Court of the United States in such cases, and heretofore

recognized by this court, should be followed in this case and the appeal dismissed.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. A preliminary question arises on the motion of the appellee to dismiss the appeal, on the ground that appellant has appealed alone without summons to the other caveatees and severance upon their refusal to join in the appeal.

The general rule of practice is well settled, that where there are two or more parties to a judgment who have a joint or dependent interest in the subject-matter thereof, they must join in the writ of error (or appeal under our statute); or else, one who alone would appeal must summon the others and obtain a severance from those who refuse. *Godfrey* v. *Roessle*, 5 App. D. C. 299, 300; *Slater* v. *Hamacher*, 15 App. D. C. 294, 298.

But we are of the opinion that there are good grounds for excluding from the operation of this general rule an appeal from a judgment denying the probate of a will.

Proceedings for the probate of wills are statutory and are substantially *in rem*. The proceeding is upon the will itself and to determine its status. Process issues formally to all known to be concerned, and where they cannot be found, or are unknown, notice by publication is effectual, to appear if they see proper and contest the probate. The judgment runs against no person, but is, simply, that the instrument before the court is, or is not, the will of the testator. As has been said by the Supreme Court of Vermont: " The judgment is upon the thing itself; and when the proper steps required by law are taken, the judgment is conclusive, and makes the instrument, as to all the world (at least as to property within this State), just what the judgment declares it to be.

" This is one instance of a proceeding upon a written instrument to determine its state or condition; and that determination, in its consequences, involves and incidentally determines the rights of individuals to property affected by it." *Woodruff* v. *Taylor*, 20 Vt. 65, 73.

In South Carolina it was said: " The question before the
ordinary involves the validity of the will, without reference
to the respective interests of the litigants, and an appeal from
his judgment may be prosecuted by any one or more of the
parties cited." *Freeman* v. *Jennings,* 7 Rich. (S. C. Law)
381, 384.

The proceeding, from institution to final judgment, is es-
sentially different from the ordinary actions *in personam,*
against two or more defendants, the objects of which are to
recover money, or property, or to compel the performance of
some act involving a right of property as between the parties
to the suit.   The motion is denied.

2. The doctrine of the common law relating to the estab-
lishment of an unsigned and unattested paper-writing as a
valid will of personal property (now happily denied by the
recently adopted code of the District of Columbia, Sec.
1626), was given in charge to the jury in a form acceptable
to the appellant.   She has, however, assigned two errors on
exceptions taken to the special instruction given at the re-
quest of the caveator, to the effect that, if the jury should
believe from the evidence that the paper-writing was written
by deceased as a draft of a will from which she intended to
have a more formal will prepared and executed, then, unless
they should further find that she was prevented from carry-
ing this intention into effect by sudden sickness or death,
their verdict must be for the caveator.

There was no error in granting this instruction.   It had
direct application to the seventh issue and to the evidence
relating thereto.

The paper itself furnishes no intrinsic evidence that it
was intended to be the last will of the deceased, and the pre-
sumption is strongly against its operation as such.   *Mason* v.
*Poulson,* 43 Md. 161; *Public Admr.* v. *Watts,* 1 Paige Ch.
347, 357; *Watts* v. *Public Admr.,* 4 Wend. 168.   In conclud-
ing the discussion of the general question, Mr. Jarman says:
" In all such cases the ecclesiastical courts required very dis-
tinct evidence of a testator eventually adhering to and adopt-
ing as his deliberate will the preliminary document, in case

he afterwards lived long enough to have executed a more complete instrument." 1 Jarman on Wills (6th ed.), p. 130.

The sworn answer of the appellant, it must be remembered, contained the statement that the deceased caused the paper to be preserved with testamentary intent, and directed that her attorney be sent for to prepare the same in proper form so that she might execute it as her will, but her death prevented the formal execution of the said paper, etc. This answer was read to her when she testified, and no explanation was attempted to be offered. Though living with her sister, the testatrix, on terms apparently of affection and confidence, the latter gave her no charge concerning the paper as her will. There was nothing in the evidence tending to show that she was prevented from having the formal will prepared and executed if such had been her intention.

The only evidence in support of the testamentary character of the paper was furnished by the witness Widdicombe, who was directly interested in its establishment as the will of deceased. According to his statement the paper was written November 28, 1900, and for nearly one month thereafter the writer remained physically and mentally capacitated to make a formal disposition of her estate. Had he been uncontradicted in a single particular, by evidence on the part of the caveator, the court would not have been bound to accept his statement as absolutely true, and thereupon to practically withhold the seventh issue from determination by the jury. He was contradicted, however, in several particulars, namely, in respect of the time when the paper had been written, and its contents.

The authorities upon which the appellant relies, and others as well, whilst asserting the doctrine that an incomplete and unsigned will or memorandum may be admitted to probate as the last will of the writer, also maintain that it must have been intended to operate as a will in its then state, or if a memorandum for the preparation of a formal will, that the testator had been prevented from carrying out this later intention through sickness, death or some other casualty; and further, that there must have been a continuation of this

intention down to the time when the act of God intervened to prevent its execution. *Boofter* v. *Rogers,* 9 Gill, 44, 53; *Plater* v. *Groom,* 3 Md. 134, 143; *Mason* v. *Poulson,* 43 Md. 161; *Devecmon* v. *Devecmon,* 43 Md. 335, 345; 1 Jarman on Wills (6th ed.), pp. 129, 130.

A special objection has been raised in one of the assigned errors that have been considered together to the use of the adjective " sudden " as qualifying the word " death " in the special instruction aforesaid. Had this objection been made on the trial the court might well, and probably would, have caused the word to be stricken out; for in indicating to the jury the forms which their findings might take, one was stated thus: " It was intended as such draft, but her sickness and death prevented the preparation and execution of a more formal will." As no objection was then made to the qualifying word, the appellant is in no situation now to take advantage of the error, if such it be.

The objection, however, is technical, and appears to us to be wholly immaterial. The jury could not have been misled or confused (especially in view of the form of the answer which they were told they might return if warranted by the evidence) in determining the substantial question whether the testamentary intention, once existing, continued until the death of the writer of the paper.

3. The last assignment of error to be considered is on the exception taken to the refusal of the prayer of the caveatees, on the conclusion of the testimony, for a direction to the jury to return a verdict in their favor on all the issues submitted. The point raised has been practically disposed of by what has been said in the discussion of the preceding assignments, and we deem it unnecessary to add anything thereto.

For the reasons given, the judgment will be affirmed, with costs, and it is so ordered.          *Affirmed.*